# WILLIAM P. BRYANT *et al.*

## *v.*

# HENRY SIMONEAU *et al.*

1. ATTACHMENT—*fraudulent removal of debtor's property.* In this case, it was held, that the evidence was clearly sufficient to sustain the attachment, on the ground that the debtors were removing their property beyond the limits of the State, for the purpose of defrauding their creditors.

2. SAME—*what evidence sufficient to sustain.* To sustain an attachment, on the ground that the debtors were removing their property beyond the limits of the State to defraud their creditors, proof of the fact that one of the debtors admitted that the other, his partner, had absconded to another State, and taken most of the means of the firm, leaving him to pay the debts, is alone sufficient. The fact, that he was aware of his partner's intention, and made no effort to prevent him from taking the firm means, implies that it was done with his consent, and renders both guilty of the fraudulent act.

3. FRAUD—*how proved—extent of the rule.* Fraud, like all other facts, may be proved by circumstances. Not, however, by circumstances that merely raise a suspicion; and when they are so strong as to produce conviction of the truth of the charge, although some doubt may remain, it will be considered as proved. This is believed to be the extent of the rule, that fraud must be proved.

WRIT OF ERROR to the Circuit Court of Woodford county; the Hon. S. L. RICHMOND, Judge, presiding.

This was an action commenced by attachment, brought by the defendants in error, Henry Simoneau and Walter P. Colburn, in the court below, against the plaintiffs in error, William P. Bryant and S. B. Bushnell, partners, under the firm of Bryant & Bushnell. The cause was tried before the court and a jury, and a verdict found for the plaintiffs for $452.49. A motion for a new trial was entered, which the court overruled, and rendered judgment on the verdict; to reverse which, the record is brought to this court by writ of error. The facts in the case are fully stated in the opinion of the court.

Messrs. CLARK & CHRISTIAN, for the plaintiffs in error.

Messrs. INGERSOLL & McCUNE and Mr. S. D. PUTERBAUGH, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears, from the record in this case, that on the 18th day of June, 1869, defendants in error sued out a writ of attachment from the Woodford Circuit Court, against the goods, chattels and effects of plaintiffs in error. The affidavit alleged an indebtedness, and that the defendants were about to depart from the State with the intention of having their effects removed therefrom. By leave of the court, plaintiffs subsequently filed an amended affidavit, charging that defendants had fraudulently conveyed or assigned their property and effects, for the purpose of hindering and delaying their creditors in the collection of their debts, within two years of the filing of the original affidavit; that they had fraudulently concealed their property or effects within the same time, for the purpose of delaying their creditors, and they were about fraudulently to conceal or assign their property, so as to hinder and delay their creditors, at the time of filing the original affidavit. Defendants filed a plea in abatement, traversing the allegations of the affidavits. A trial was had by the court and jury, and the issues were found for plaintiff, and judgment was rendered on the verdict.

It is urged, that there is no evidence that plaintiffs in error were endeavoring to remove their property from the State, or that they had endeavored to fraudulently sell it, or otherwise dispose of it for fraudulent purposes. It appears that Bushnell had, a short time previous to the commencement of the suit, absconded, and gone to the State of Indiana, and plaintiffs in error had been making efforts to sell their stock of goods; and a short time before the suit was commenced, and on the night before he left, he loaded goods from the store, marked,

"Household Goods," which were taken away in a wagon; that the front door and blinds were closed when they were taken. The clerk and teamster fix the hauling the goods from Secor to Gridley a few days before the commencement of this suit, while the station agent of the railroad fixes the shipping of a lot of goods similarly marked, several weeks later, but thinks the goods had been there about a week before they were shipped.

It is clear, beyond question, that the goods, taken from the rear of the store at night, and sent from a point where there was a station on the road, beyond another station, to Gridley, to be shipped by the same road, were fraudulently concealed. They seem to have left Secor at 3 o'clock at night, and in a rain storm, in bad roads. If the purpose was fair and honest, why this clandestine concealment and secret course, seeking a stormy night, when but few, if any, persons would be abroad? The evident purpose of those engaged in this transaction was to elude the vigilance of creditors. But it is urged, that as the freight agent fixes 'the shipment of the goods to Bushnell, in Indiana, on the 2d day of August, it follows, that the goods were removed after the suit was brought. It will be observed that the freight agent does not fix the date of their being placed in the depot, but says they had been there about a week, while the clerk in the store, and the teamster who hauled the goods, fix it at a short time before this suit was brought. Here was an apparent contrariety in the evidence, which the jury were required to reconcile, and they probably believed the freight agent was mistaken as to the time when the goods were placed in the depot. They would most probably so conclude, rather than believe that two witnesses swore falsely. Or they may have concluded that there had been another lot of goods hauled to Gridley by another person, as the freight agent was not certain as to the name of the teamster.

Independent of all this testimony, however, we have the admissions of Bryant proved, that Bushnell, his partner, had absconded to Indiana, and taken most of the means of the

firm with him, and left Bryant to pay the debts.  This evidence would alone be sufficient to warrant the conclusion that plaintiffs in error were removing their goods  beyond the limits of the State to defraud their creditors.  So far as we can see, Bryant made no effort to prevent Bushnell from taking the firm means; and if he knew of his intention to do so, and made no effort to prevent it, the jury were warranted in believing that it was with his assent.  And if so, both partners were guilty of removing their goods beyond reach of process, for the purpose of defrauding their creditors.

It is urged, that fraud must be proved and not inferred. This is true, but, like all other facts, it may be proved by circumstances.  We should seldom, if ever, expect to prove fraud by the admissions of a party, nor should we expect to find direct and positive evidence of the fact.  Whatever circumstances, when proven, convince the mind that the fraud charged has been perpetrated, is all that is required. *Bullock* v. *Narrott*, 49 Ill. 62; *Gray* v. *St. John*, 25 Ill. 222; *Boies* v. *Henney*, 32 Ill. 130.  While fraud can not be established by circumstances that merely raise a suspicion, yet, when they are so strong as to produce conviction of the truth of the charge, although there may remain some doubt, then it is proved.  This is believed to be the extent of the rule that fraud must be proved.  Any other application of the rule would render it impracticable and useless.  If it can not have the force we have given it, and stand, then the demands of justice would require its abrogation.  If it must prevail, and none but positive evidence could prove fraud, then the rule would not only promote, but it would aid in concealing fraud. But such never can be the scope or effect of the rule.

The instructions presented the law of the case fairly to the jury, and the evidence sustains the verdict, and the judgment of the court below must be affirmed.

*Judgment affirmed.*