CHARLES SCHWARZ, Plaintiff in Error, *vs.* ELI REZNICK *et al.* Defendants in Error.

*Opinion filed February 20, 1913.*

1. FRAUD—*fraud may be proved by circumstances.* Fraud, like other facts, may be proved by circumstances which convince the mind of its existence, even though there is no direct and positive testimony of the fact.

2. SAME—*gross inadequacy of consideration may itself establish fraud.* Mere inadequacy of consideration is not, *per se*, ground for setting aside a transfer of property, unless the inadequacy is so gross and palpable as to amount, in itself, to fraud.

3. SAME—*what fact raises a presumption that purchaser of land was connected with fraud.* The fact that a person purchases for $1800 a tract of farm land which he himself had sold shortly before for $4800 to a person who was thereafter fraudulently induced to trade it for worthless city property raises a strong presumption that such purchaser was connected with the fraud.

WRIT OF ERROR to the Circuit Court of Bond county; the Hon. W. E. HADLEY, Judge, presiding.

J. P. STEUBER, and BURROUGHS & RYDER, for plaintiff in error.

C. E. HOILES, and D. J. SULLIVAN, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Bond county to set aside certain deeds to eighty acres of land therein. After evidence was taken before the master the court ap-

proved the master's report and dismissed the bill for want of equity. This writ of error was thereafter sued out.

The plaintiff in error, Charles Schwarz, purchased the eighty acres in question from the defendant in error John Seyfried on September 16, 1908, giving therefor notes for $3186, which were afterwards paid, and live stock valued in the deal at $1614, making a total of $4800, or $60 an acre, as the agreed price. Shortly afterwards Schwarz became desirous of disposing of the farm, and asked Joseph Wiseman, who resided at Highland, in Madison county, where Seyfried also resided, to find a purchaser. It appears from the evidence that Wiseman had assisted in negotiating the trade just referred to, between Schwarz and Seyfried. Schwarz was a married man about forty years of age, and previous to the trade had been a farmer on land owned by his father, in Madison county, near Highland. After Schwarz asked Wiseman to find a purchaser for the farm, through some of the latter's acquaintances in St. Louis a trade was offered for certain real estate in that city claimed to be owned by defendant in error Eli Reznick. Wiseman arranged for Reznick to come to Highland, where he was met by Schwarz at Wiseman's house. While they were talking about a trade Seyfried was called on the telephone by Wiseman and requested to come over and describe the land and state its value. When Seyfried reached Wiseman's house he was asked by Schwarz if the land was not worth $65 an acre, and replied that $70 an acre was more like it. Defendants in error insist that Schwarz made an effort to have Reznick agree to take the farm without going to look at it, and paid one Kuplar $15 to induce Reznick not to insist on seeing the farm. Plaintiff in error claims that the $15 was not given Kuplar for that purpose, but because he was told by Wiseman it was necessary to pay that amount of money to have the trade go through. We think it is clear from the testimony that Kuplar and Reznick were working together to consum-

mate the trade.  It was not concluded that day, but, in accordance with the agreement then made, Schwarz and his wife went to St. Louis shortly thereafter for that purpose. Wiseman went along with them, although not present in the room at the time the transaction was closed.  That day, in St. Louis, Schwarz and his wife conveyed to Reznick the eighty acres and took from him a deed to certain St. Louis real estate, which appears from the evidence to be worth less than $450.  A man by the name of Hart was present.  He told Schwarz if the deal was closed he would agree to purchase the St. Louis land for $4800 cash and paid $100 down to Schwarz, claiming that he wished an option until he could raise the whole amount of money offered.  The evidence shows that Hart did nothing further as to the purchase of the St. Louis property.  It is apparent that the offer was made and the $100 in cash paid merely for the purpose of giving Schwarz a wrong impression as to the value of the St. Louis real estate.  Within a very few days Reznick told Wiseman he wanted to find a purchaser for the farm, stating that he would sell at a bargain.  Wiseman asked Seyfried if he wanted to buy the farm.  They both testified that Seyfried said he did not want it unless at a bargain;  that he would not pay more than $1800, and that if it was purchased at that price he would give Wiseman $50.  Seyfried, accompanied by his attorney, went to St. Louis.  One William Thurston was with them.  Thurston and Seyfried both claim that they met with reference to another trade on the train to St. Louis. The attorney had already examined the records in Bond county and found the title in Schwarz.  At St. Louis Reznick produced his deed from Schwarz, and the attorney, upon examination, found that the land was described as in Madison county instead of Bond county.  On this account, if for no other reason, the sale was not consummated that day.  On November 2, 1908, a corrected deed was taken by Kuplar, Reznick's agent, to Highland and signed

257 — 31

and acknowledged by Schwarz and his wife. The following day Reznick's agent, Kuplar, went with the corrected deed to Greenville, Bond county, Illinois, where Seyfried's attorney resided, and also carried with him an executed deed from Reznick to Thurston. This latter deed was dated and acknowledged October 31, 1908, before the corrected deed from Schwarz was obtained. The attorney, without communicating with Seyfried, paid, according to his testimony, $1800 to the agent of Reznick, drawing, through a bank in Greenville, on Seyfried for the amount, and immediately recorded the corrected deed from Schwarz and his wife to Reznick and the deed from Reznick to Thurston. Thurston thereafter made a deed to Seyfried for the property, which was dated and executed November 5, 1908, but it was not recorded until September 20, 1909, more than a month after the bill in this case was filed. Thurston and Seyfried testified that the title was taken in Thurston's name because he had in mind a possible purchaser, and thought he could dispose of the land to better advantage if in his name than if it were in Seyfried's name. Plaintiff in error contends that all the transactions were arranged by Seyfried with the purpose of obtaining the farm himself at a grossly inadequate price, which resulted in Schwarz being left with property valued at about $450, while Seyfried had the farm for $1800 which he had shortly before sold to Schwarz for $4800.

None of the parties in St. Louis who were present at the time the trade was made between Reznick and Schwarz testified on the hearing before the master, and while Reznick and his wife were made parties by publication, so far as the record shows they did not appear or answer. Counsel for Seyfried concede that Schwarz was swindled in trading for the St. Louis real estate but insist that the whole transaction between Schwarz and Reznick was carried on without the knowledge or connivance of Seyfried or Thurston; that the transaction whereby Seyfried be-

came re-possessed of the farm was entirely independent, made with Reznick and satisfactory to the latter; that Seyfried was an innocent purchaser, without knowledge of any fraud or claim of fraud practiced against Schwarz. Manifestly, from this record, Wiseman was an acquaintance of Seyfried and was familiar with the trade made between Reznick and Schwarz. He brought them together and was present during their first talk; was in St. Louis the day the trade was made; brought Seyfried and Reznick together after the trade, and was a general go-between in all three trades of the farm,—first from Seyfried to Schwarz, next from Schwarz to Reznick, and then from Reznick to Seyfried. One George Klein testified that he met Wiseman in East St. Louis about five or six months after Schwarz had deeded the property to Reznick, and that Wiseman then and there stated, in the presence of Seyfried, that Kuplar and he had "skinned" Schwarz out of his farm. Wiseman denied making this statement. Wiseman and Seyfried both testified that the latter paid the former $50 commission on the purchase of the farm by Seyfried from Reznick. It is also clear from the evidence that Wiseman received a commission on the other two trades of the farm.

The evidence in this record shows that the eighty acres in question, at the time of these transactions, was worth at least double the amount for which Seyfried re-purchased it. Seyfried himself had sold the place to Schwarz, about a month and a half before he re-purchased it, for a stated consideration of $4800, of which $3186 was cash. We can reach no other conclusion than that fraud entered into the trade between Reznick and Schwarz in transferring the farm for the real estate in St. Louis. This is conceded by counsel for defendants in error. The evidence shows that Kuplar owned the St. Louis property some time previous to the trade with Schwarz. Kuplar himself was the active agent in carrying on the trade for Reznick. So far as we can judge from the record, Reznick may have been only

the nominal and Kuplar the real owner of the property. Hart was clearly brought in to deceive and mislead Schwarz as to the value of the property and make him eager to buy it. The conspirators were willing to pay out $100 for that purpose. Kuplar and Reznick told Schwarz at Wiseman's house, when they first met to talk about the trade, that they knew of a purchaser in St. Louis who would pay $5000 for the St. Louis property. When Schwarz went to St. Louis Hart was present and introduced as the man who would carry out such a trade. Hart said at that time that he wanted ten or fifteen days in which to raise the money. Within that fifteen days the property was re-sold to Seyfried and all the papers put of record. Apparently Reznick wished to dispose of the property before Schwarz learned that Hart did not intend to buy it at that figure, and with this fact in mind, Wiseman, if not Seyfried also, was willing to hurry the matter through. Seyfried must have known that Schwarz had been defrauded in trading the farm for the St. Louis property, otherwise Reznick would not have been so anxious to quickly dispose of the farm for such an inadequate value. Seyfried himself had sold the farm, as we have stated, for a consideration of $4800 only a month and a half before, and only a few days before he re-purchased the farm for $1800 he stated in Wiseman's house that it was worth more than $5000. Then, too, the haste with which Seyfried wished to close up the transaction, telephoning his attorney to meet him the next day on the train; the attorney examining the records that morning at the county seat of Bond county before taking the train; the correction of the deed from Schwarz to Reznick the next day; the closing up of the transaction by Kuplar the following day, not with Seyfried, but with the attorney in Greenville, making it necessary for the attorney to draw, through the bank, on Seyfried for the amount of the purchase money; the deeding of the property to Thurston instead of to Seyfried; Thurston holding the title of record

in his name until after these proceedings had started;—all these circumstances indicate that Seyfried had some reason for the haste with which he was conducting the negotiations, and also had some reason, other than that given, for taking the title in Thurston's name.

There is such a gross disproportion between the price paid by Seyfried in the re-purchasing of this land and what he knew it to be really worth that this, of itself, is enough to raise a strong presumption of fraud. Mere inadequacy of price is not, *per se,* ground to set aside a transfer of property, yet it may be so gross and palpable as to amount, in itself, to a proof of fraud. (*Reed* v. *Peterson,* 91 Ill. 288; *Witherwax* v. *Riddle,* 121 id. 140; *Walker* v. *Shepard,* 210 id. 100.) Fraud, like all other facts, may be proved by circumstances. We seldom expect to prove it by the admissions of a party and rarely to find direct and positive evidence of the fact. "Whatever circumstances, when proven, convince the mind that the fraud charged has been perpetrated, is all that is required." (*Bryant* v. *Simoneau,* 51 Ill. 324; *Illinois Kaolin Co.* v. *Goodman,* 252 id. 99.) The circumstances in evidence in this case convince us that Seyfried was a party to the transactions by which plaintiff in error was defrauded in trading his farm for the St. Louis property. The court should not have dismissed this bill for want of equity, but should have entered a decree setting aside the deeds and ordering the delivery of possession of the farm as prayed for in said amended bill, with such an accounting as to rents and profits and other items in relation to said farm since said re-purchase by Seyfried as under all the circumstances of this case would be just and equitable.

The decree of the circuit court will be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.    *Reversed and remanded.*