EFFIE J. COHEN, Appellee, *vs.* JULIUS FRIEDMAN *et al.*—
(DAVID J. FRIEDMAN, Appellant.)

*Opinion filed June 18, 1913—Rehearing denied October 15, 1913.*

1. FRAUD—*fraud rarely established by direct evidence.* Fraud is rarely established by direct and positive evidence, but, like any other fact, it may be proved by circumstances which convince the mind of its existence.

2. SAME—*when transaction by one tenant in common is fraudulent as to the other.* Where one tenant in common, in pursuance of a design to acquire the other co-tenant's interest, delays payment of interest on a mortgage until it is foreclosed and then procures his son to redeem from the sale for his benefit, the transaction is fraudulent as to the rights of the other co-tenant, and she may enforce her rights in equity against him and the son.

3. SAME—*when statements and declarations of a co-tenant are admissible.* Where a bill charges fraud and conspiracy on the part of the complainant's co-tenant and his son to obtain complainant's interest by suffering a foreclosure of an encumbrance upon the property and having the son purchase the certificate of sale, admissions and declarations by the co-tenant defendant, after the purchase of the certificate of sale, to the effect that he owned the property, are admissible though made out of the son's presence.

4. STATUTE OF FRAUDS—*defendants must plead the Statute of Frauds to take advantage of it.* Defendants to a bill charging fraud in obtaining complainant's interest in land by means of a collusive redemption cannot take advantage of the Statute of Frauds unless it is pleaded, and their failure to plead the statute is not excused by the claim that they could not anticipate the nature of the proof to be made by the complainant.

5. REDEMPTION—*when a complainant need re-pay but half of amount paid to redeem.* Where the proof shows that a redemption was made by a third party, as the agent of one co-tenant, for the purpose of defrauding the other co-tenant, a decree finding the latter to be entitled to share in the benefit of the redemption need only require her to re-pay to the agent one-half of the amount paid by him to redeem.

APPEAL from the Circuit Court of Cook county; the Hon. E. M. MANGAN, Judge, presiding.

F. L. SALISBURY, and M. MARSO, for appellant.

BURKE, JACKSON & BURKE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Cook county by appellee asking for an accounting and that she be declared the owner of an undivided one-half interest in certain real estate in Chicago, subject to a certain encumbrance. After a hearing before a master in chancery the court entered a decree sustaining the master's report and finding for appellee, as prayed in her bill. The cause was thereafter appealed to this court.

April 29, 1896, Rosa Cohen and Julius Friedman were the owners of a building at the corner of Harrison and Laflin streets, in Chicago, occupied for manufacturing purposes. On that date said two owners (Mr. Cohen and Mrs. Friedman also joining) executed to the Philadelphia Savings Fund Society a mortgage to secure a loan of $17,500, due in five years. This loan and mortgage were afterwards extended so that $2500 became due April 29, 1903, and the balance in 1906. In 1901 Mrs. Cohen conveyed her half interest to her daughter, Effie J. Cohen, appellee herein. May 2, 1904, said society filed a bill to foreclose its mortgage, as default had been made in certain payments thereunder. The decree of foreclosure was entered and a master's sale was held. Said society became the purchaser for $19,755, receiving the usual master's certificate. Thereafter certain negotiations were had with said society, as the result of which the certificate was assigned to David J. Friedman, son of Julius Friedman, for a consideration of $20,864.57, the society receiving in cash therefor approximately $6000 from David J. Friedman and said Friedman also executing to said society a trust deed securing the balance of the purchase money. Just before the expiration of the redemption period of fifteen months from the date of sale this bill was filed, asking that the master in chancery be restrained from issuing the deed under said foreclosure

259 – 27

sale; alleging that the certificate was, in fact, held by said David J. Friedman for the benefit of his father, Julius Friedman, and that the property should still be found to be the property of said Julius Friedman and appellee, as tenants in common. The court issued the injunction against said David J. Friedman and the master in chancery, as prayed. Afterwards, in order that certain arrangements might be made for the benefit of all concerned, the master in chancery was permitted to issue a deed to David J. Friedman but without prejudice to appellee's rights as they stood before the issuing of the deed, and with the provision for an accounting as to rents if appellee established a right in the property.

From the evidence it appears that the real estate in question was originally purchased by Julius Friedman and Hyman J. Cohen. Afterwards Cohen conveyed his half interest to his wife, and she through an intermediate party conveyed said half interest to her daughter, appellee herein. In making the loan of $17,500 through said society Rosa Cohen received of said proceeds $10,000 and Julius Friedman $7500. On account of the unequal distribution of the proceeds Friedman persuaded Mrs. Cohen to give him a trust deed for $2500 on her undivided one-half interest in the property, subject to the lien of the mortgage to said society. When the society, through its agent in Chicago, Henry B. Mason, began to press for the payment of its loan, negotiations were commenced between Mrs. Cohen and Friedman with reference to meeting the obligation. Friedman had been collecting most of the rent from the premises from the time it had been acquired by Mrs. Cohen and himself. It is alleged, and the proof tends to show, that he had a considerable amount of the rents belonging to Mrs. Cohen just before the foreclosure. She testified that in the course of the negotiations he agreed to take $3500 for his interest in said real estate, on which payment she was to be credited with such amount ($2000 or more)

as Friedman owed her for the rents; that she was obliged to delay a settlement to cash some securities in order to raise the money, to which delay he agreed, but when she called him up on the telephone about two weeks later he said it was too late,—that the matter was in his attorney's hands. Other witnesses testified that negotiations were had in which Friedman agreed to take $3500 for his equity but afterwards refused, saying that the matter was in the hands of his attorney; and there is other evidence in the record tending to show that Friedman planned to keep Mrs. Cohen from settling, in order that the property might be foreclosed and he thus have an opportunity to buy it in for himself. To one of the witnesses who said to him that he would lose all his investment if he did not make some settlement with Mrs. Cohen, Friedman replied: "I am not afraid of that; I will protect myself;" and later he said: "I want to hold on to all the money that I get hold of in this matter." There was also evidence in the record tending to show that after the sale to the son, David J. Friedman, both he and his father said to various persons that the property belonged to Julius Friedman; that David J. Friedman had little knowledge of the building and was seeking and taking advice from his father as to handling it and referring inquiries to his father concerning the sale and leasing. Mason, the agent of the society, testified that David J. Friedman paid him the money at the time the certificate was assigned. He stated, also, that he had a message from the father, Julius Friedman, at about that time, the record not showing what this message was. David J. Friedman testified that the cash (about $6000) that was paid in purchasing the certificate was his own money; that about $2000 of that money he raised by calling in a loan he had made to his father's firm, and that $3000 of the $6000 he borrowed of friends. There is testimony of one witness which tends to corroborate a part of his testimony.

The decree of the court found, in accordance with the recommendations of the master, that Julius Friedman formed a design of "freezing out" his co-tenant in the real estate in question and becoming himself the sole owner by means of allowing the mortgage to be foreclosed and acquiring the title either by buying at the foreclosure sale or by subsequently buying the certificate of sale; that David J. Friedman, the son, was cognizant of this design and co-operated with his father in carrying it into effect. The decree further found that Julius Friedman was dealing with a woman who was inexperienced in business affairs, and persuaded her, because she had received $2500 more than he from the proceeds of the $17,500 loan, that it was only fair and right that she should give him a note of $2500, secured by a trust deed on her half of the property; that this note and trust deed served a double purpose,—first, the putting upon record of the trust deed seriously crippled appellee's borrowing power when she tried to negotiate a new loan; and second, it furnished Julius Friedman an excuse for retaining her share of the rents until such debt was paid and omitting to pay the interest on the mortgage loan; that the subsequent purchase of the certificate of sale by David J. Friedman was done in pursuance of this design and in co-operation with his father; that said David J. Friedman bought the said certificate before the redemption period expired and for the purpose of holding it in trust and to assist Julius Friedman in carrying out the scheme of securing from appellee her interest in said property and in the equity of redemption. The decree found that appellee was the owner, in fee simple, of an undivided one-half interest in said real estate and that the title to the other half interest was in David J. Friedman, who also held title to appellee's half in trust for her; that said David J. Friedman, and all other persons who might be found to have any interest in said property, should convey to appellee her undivided one-half interest, free and clear of all claims and

encumbrances, subject, however, to its one-half of the Philadelphia Savings Fund Society mortgage, upon the payment by appellee to David J. Friedman of one-half of the amount of money paid by him to said society in purchasing said certificate; that a full and complete accounting relating to said property between appellee and the estate of Julius Friedman and between appellee and David J. Friedman be had and payment be made of such sum as may be found upon taking such account.

The weight of the evidence, in our judgment, tends to support the finding of the decree that the certificate of sale was purchased by David J. Friedman in pursuance of an agreement between him and his father whereby the latter planned to secure the interest of his co-tenant in the property. The rentals of the building in question amounted to about three times the interest on the mortgage. The only definite estimate found in the record as to the value of this property is $40,000. It is somewhat difficult to believe that Julius Friedman would sit by and allow the period of redemption to run and allow his son to take the property from him by merely raising $6000 in cash. The evidence tends to show that he had in his hands approximately $2000 in rent belonging to the appellee. This, added to the rentals earned during the period of redemption, would have been almost sufficient to redeem the property under such an arrangement as was made by David J. Friedman with the society. Manifestly, the society was willing to make any reasonable arrangement and let the loan continue, for after the foreclosure sale it again made a large loan to David J. Friedman, approximately the same as the original loan on the property. From a study of the evidence it seems clear that the reason Julius Friedman was willing to sit by and allow the period of redemption to pass was that the son's ownership of the certificate of sale was, in fact, his ownership and for his benefit; that he had his son redeem it in this way in order, if possible, to deprive his co-defendant of

her share. Appellee, on her part, did not sit idly by without attempting to do anything. The evidence shows that negotiations were constantly going on in her behalf in an endeavor to come to some settlement with Julius Friedman, whereby, before the foreclosure sale, some adjustment could be made to keep the property in the hands of the original owners, and after the foreclosure endeavors were made to come to some settlement with Friedman so that the property could be redeemed by one or both of them. The evidence on this last point is not contradicted. It shows that Julius Friedman had no desire to come to an agreement with his co-tenant. His delay and lack of interest can only be consistently explained on the theory that he knew the matter was provided for so far as his interests were concerned. We rarely expect to find direct and positive evidence showing fraud. Like all other facts it may be proved by circumstances which convince the mind of its existence. (*Schwarz* v. *Reznick,* 257 Ill. 479, and cases cited.) Where a co-tenant enters into negotiations with a third person whereby such third person agrees to bid in property, and after the period of redemption expires transfers to the co-tenant, the transaction is fraudulent, and the purchasing co-tenant, whether he buys himself or through an agent, acquires no title against his co-tenants. An agent cannot acquire title at a sale of land. Whatever interest he does acquire will be held by him in trust for his principal. A purchase by an agent of one of the co-tenants will generally be allowed no further effect than if made by his principal. (*Peabody* v. *Burri,* 255 Ill. 592, and cases cited.) On this record we cannot escape the conclusion that the findings of the decree and the recommendations of the master as to the collusion of the two Friedmans, father and son, are clearly right.

After the case was referred to the master in chancery Julius Friedman died and his administratrix and heirs were made parties to the suit, but David J. Friedman, in his own

right, alone perfected this appeal. His counsel contend that the testimony as to the declarations and statements of Julius Friedman as to his ownership of the building, made when David J. Friedman was not present, were incompetent as against appellant. Conspiracy and fraud were charged here, and, as we have held, the evidence tends to prove those charges, hence the cases cited by counsel for appellant on this point do not apply. (See 2 Cyc. 104, and cases cited; 3 Greenleaf on Evidence, sec. 94.)

Counsel for appellant further contend that the evidence to show the express trust which they claim was found by the decree was none of it in writing, and that therefore such trust was not proved as against the Statute of Frauds. Appellant did not plead the statute and therefore cannot avail himself of it. (*Highley* v. *Metzger,* 187 Ill. 237; *Clayton* v. *Lemen,* 233 id. 435, and cases cited.) The argument of counsel that it was not necessary to plead the statute as they could not anticipate the proof to be made by appellee is without force. The case of *Taylor* v. *Merrill,* 55 Ill. 52, cited by them on this point, is not applicable to the facts of this case.

Counsel for appellant further contend that there is a variance between the allegations of the bill and the findings of the decree; that the bill alleged that Julius Friedman purchased the certificate through his son, for himself, while the decree found that David J. Friedman advanced the money for the father with an agreement to convey the premises to the father upon receipt of the sum so paid. There is practically no substantial difference in the allegations of the bill and the findings of the decree on this point.

It is further contended by appellant that the decree is incorrect in finding that he should be re-paid only one-half of the amount he paid to the society for the master's certificate; that there was no privity existing between him and appellee at the time of the purchase of said certificate; that she was not his co-tenant, and that the decree should have

required that he be paid back all he paid to said society. In view of the conclusions already reached in this opinion that David J. Friedman was acting as the agent of his father in this purchase, the decree rightly found that, subject to one-half of the mortgage to the society, the title to one-half of the property should be deeded to appellee on the payment of one-half of the amount paid out by said David J. Friedman in purchasing said certificate. A settlement should be had between appellee and David J. Friedman, the same as if the property stood in the name of appellee and the heirs of Julius Friedman. The trial court, in making the accounting ordered by the decree between all the various interests, can make such a finding as will protect the interests of all parties in accordance with the views herein set forth.

The decree of the circuit court will be affirmed.

*Decree affirmed.*