GEORGE FITZPATRICK, Plaintiff-Appellee, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (5th Division)   No. 84—1311

Opinion filed March 1, 1985.

James D. Montgomery, Corporation Counsel, of Chicago (Jerome A. Siegan and Julie Elena Brown, Assistant Corporation Counsel, of counsel), for appellants.

Ambrose & Cushing, P.C., of Chicago (Richard A. Michael, of counsel), for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from a judgment entered on a jury verdict for plaintiff in a personal injury action.

Plaintiff brought this action against defendants, the city of Chicago (the city), and Officer Theodore Ptak (Ptak), to recover for injuries he sustained during a nighttime accident involving an automobile driven by Isaias Marin[1] which collided with Ptak's squad car, causing it to strike him. In his complaint, plaintiff alleged, in substance, that his injuries were the proximate result of Officer Ptak's negligence in improperly parking his vehicle on the shoulder of the highway and failing to adequately illuminate it so as to cause it to be visible to oncoming traffic. In their answer, defendants denied liability and asserted, as an affirmative defense, governmental immunity under sections 2—202 and 2—109 of the Local Government and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 2—202, 2—109) (the Tort Immunity Act), which provide, respectively, that "a public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes wilful and wanton negligence" and that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."

---

[1]Although named as a defendant in plaintiff's complaint, Marin is not involved in this appeal.

There is no dispute that as he was driving northeast on the Stevenson Expressway in Chicago at about 1 a.m. on February 23, 1980, plaintiff caused a minor accident when, in changing lanes, his automobile struck the rear of a car being driven by Leo Jefferson.

At trial, Jefferson testified that when his car—a Buick—came to a stop after the accident, it was partially on the left shoulder and partially on the median strip between the northeast and southwest lanes at a slight northerly angle and directly beside a streetlight, the motor was still running, and the lights were on. After unsuccessfully attempting to move the car—which seemed to be stuck in mud—his brother-in-law and a co-worker walked down the shoulder of the highway to seek assistance. When he first saw the police car approaching from the southwest-bound side of the highway, all of its lights—including the revolving blue dome light—were on; but after driving across the median and parking the squad car two to three feet behind his vehicle, facing southwest and positioned either slightly on the traffic lane or at the edge thereof, the officer turned off all the lights. About 10 minutes later, as he, plaintiff, and Officer Ptak were examining the damage to his car, the vehicle being driven by Marin collided with the front of the squad car, propelling it a few feet backward and causing it to strike plaintiff, who was standing between the Buick and the police car.

The testimony of Jefferson's wife, Betty, was essentially the same, except she stated that the police car was parked between the median and the shoulder, not on the traffic lane.

Plaintiff's testimony relating to the accident with Jefferson's car, the arrival of Officer Ptak, and the location of and lack of lighting on the police vehicle before it was struck was also substantially the same as Jefferson's, although he maintained that the portion of the highway where the accident occurred was poorly lit in comparison to the area directly southwest, from which oncoming traffic approached.

Officer Ptak testified that he was driving southwest on the Stevenson Expressway when he saw one car parked on the median, another stopped on the opposite side of the highway, and people on the side of the roadway waving to him. He then activated all of the emergency lights on the squad car, drove across the median, and parked facing southwest between the median and the shoulder a few feet behind Jefferson's car. When he exited the squad car to speak with plaintiff and Jefferson, he left all of the lights on. He was completing his examination of the damage to Jefferson's car when the second accident occurred. Although he could have traveled further down the expressway to an exit and turned around, driving across the

median and parking the car as he did was the most expeditious way to reach the accident scene to ascertain whether anyone had been injured. He also stated that the use of flares at the scene of an accident is discretionary, and that there was no need for them in this situation as the lighting conditions on the highway were good.

Officer Spreyne, a member of the traffic division of the Chicago police department, testified that it was the responsibility of a traffic officer to render aid to motorists, enforce traffic regulations, and investigate accidents. Having been one of the officers who responded to a call of the accident at issue, Spreyne identified photographs taken in his presence at the scene. They showed that all of the lights on Officer Ptak's squad car were activated, the streetlights were on, and the visibility on the roadway was good. None of the cars involved in the collision had been moved or altered in any way before the photographs were taken. Spreyne also stated that it was not unusual, nor unsafe, to park a police car facing oncoming traffic in situations such as the one here.

The trial court denied defendants' motion for a directed verdict, ruling as a matter of law that Officer Ptak was not engaged in the execution or enforcement of any law at the time of this occurrence, and the court also refused defendants' instructions and special interrogatories concerning governmental tort immunity. The jury returned a verdict for plaintiff, defendants' post-trial motion for judgment *n.o.v.* was denied, and this appeal followed.

OPINION

■ Defendants first contend that the trial court should have either (a) directed a verdict in their favor on the basis of the Tort Immunity Act; or, in the alternative, (b) submitted the issue of immunity to the jury. In support thereof, they assert that the evidence was sufficient to establish that at the time of this incident Officer Ptak was enforcing and executing laws relating to the investigation and reporting of traffic accidents, and that under the Tort Immunity Act, he—and therefore the city—was immune from liability for his negligence in the course thereof.

In response, plaintiff first argues that defendants were not entitled to a directed verdict or jury instructions on the issue of immunity, because they failed to properly plead it as an affirmative defense. He maintains that by merely quoting the text of sections 2—202 and 2—109 of the Tort Immunity Act, without alleging facts demonstrating their applicability to this case, defendants did not comply with Illinois rules of pleading—particularly section 2—613(d) of the Code of

Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—613(d)) (the Code), which requires that "[t]he facts constituting any affirmative defense *** must be plainly set forth in the answer or reply," and that they thereby waived governmental immunity as a defense at trial.

With respect to plaintiff's argument, we note initially that while it is not one of the defenses listed in section 2—613(d) of the Code, statutory governmental tort immunity has been recognized as a valid affirmative defense in cases involving allegations of negligence by public employees. (*Midwest Bank & Trust Co. v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 447 N.E.2d 1358; *Vines v. City of Chicago* (1982), 110 Ill. App. 3d 1060, 443 N.E.2d 652.) Further, a review of pleadings here reveals that the affirmative defense of governmental immunity is directed to the facts alleged in plaintiff's complaint; namely, that while acting within the scope of his employment as a policeman, Officer Ptak was guilty of certain specified negligent acts and omissions. Plaintiff has cited no case law, nor have we found any, requiring a defendant to. restate facts already adequately pleaded in the complaint in order to raise an affirmative defense based thereon. Neither do we believe that the language of section 2—613(d) was intended to impose such a requirement in circumstances like those in this case. When read in its entirety, that section, as well as others in the Code relating to pleadings, makes clear that the prime function of pleadings is to apprise the opposition of the nature of the claim or defense a party intends to raise at trial (*Handelman v. London Time, Ltd.* (1984), 124 Ill. App. 3d 318, 464 N.E.2d 710; see also Ill. Rev. Stat. 1981, ch. 110, par. 2—612(b)) "which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise ***" (Ill. Rev. Stat. 1981, ch. 110, par. 2—613(d)). Although plaintiff intimates that he was surprised by this defense because "there was no reference [to it] until the third day of trial," the record establishes that it was raised in defendants' answer to plaintiff's original complaint more than three years before trial and then again in their answer to his amended complaint, which was filed shortly before trial. In view thereof, we cannot see how plaintiff could have been surprised by this defense.

■ Moreover, even assuming that the defense as pleaded was factually deficient, we note that no objection was made to it until, as plaintiff has pointed out, the third day of trial when, in a conference in chambers, his counsel argued that defendants had failed to specify what law Officer Ptak was enforcing at the time of this incident. After noting the untimeliness of plaintiff's argument, the court asked de-

fense counsel what law was involved, to which counsel replied, "traffic laws which pertain to accidents, reporting of accidents." While plaintiff maintains that this response was not sufficiently specific, we again direct his attention to the Code sections governing pleadings. They variously provide that "[i]f any pleading is insufficient in substance or form the court may order a fuller or more particular statement" (Ill. Rev. Stat. 1981, ch. 110, par. 2—612(a)); that "[i]f allegations are so wanting in details, that the opposite party should be entitled to a bill of particulars, the pleader shall file and serve a copy of the bill on being served with a notice demanding it. The notice shall point out specifically the defects complained of or the details desired ***" (Ill. Rev. Stat. 1981, ch. 110, par. 2—607(a)); and that "[a]ll objections to pleadings shall be raised by motion [which] shall point out specifically the details complained of and shall ask for appropriate relief ***" (Ill. Rev. Stat. 1981, ch. 110, par. 2—615(a)). Having failed to avail himself of these procedures in the trial court, we conclude that plaintiff had waived any objections he may have raised as to the form or substance of the affirmative defense.

■ Plaintiff next argues that even if defendants' answer was sufficient to raise governmental immunity under the Tort Immunity Act as an affirmative defense, the evidence was not sufficient to warrant entry of a directed verdict in their favor based on the application thereof or to require the giving of jury instructions relating thereto.

It is well settled in Illinois that "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

In the instant case, it is uncontroverted that Officer Ptak was driving southwest on the Stevenson Expressway on patrol when he saw one vehicle on the median, another stopped on the shoulder of the northeast-bound lanes, and persons waving to him from the side of the roadway. It is also undisputed that he then activated all of the emergency lights on his squad car, drove across the median, and parked it facing southwest a few feet behind Jefferson's car—which was facing northeast. Although the testimony is conflicting as to whether he left the lights on or turned them off before exiting the car, it is agreed that he then walked back toward Jefferson's car, where he spoke with plaintiff and Jefferson about the accident, examined the damage to the latter's vehicle, and wrote an accident report.

Citing *Arnolt v. City of Highland Park* (1972), 52 Ill. 2d 27, 282

N.E.2d 144, in which the supreme court held that "[t]he immunity granted a public employee [by section 2—202] extends only to the act or omission done while in the actual execution or enforcement of a law and not to every act or omission done while on duty as a public employee" (52 Ill. 2d 27, 33, 282 N.E.2d 144, 147), plaintiff posits that even if investigating and writing a report of the first accident could be considered executing or enforcing a law—which he does not concede—since the evidence establishes that Officer Ptak did not know that an accident had occurred until after he parked and exited his car, it logically follows that at the time he parked it in the manner found to be negligent, he was not yet executing or enforcing any laws, but merely performing the routine duties of a policeman assigned to patrol the highway.

Defendant disputes plaintiff's interpretation of the evidence, arguing that, although Officer Ptak stated that he did not personally observe the first accident, his testimony indicates that upon seeing two cars on opposite sides of the median and people waving to him from the side of the roadway, he became aware that an accident had occurred and immediately proceeded to perform an unbroken series of actions—which necessarily included parking the squad car—to reach the scene of the accident in the most expeditious way possible so as to determine whether anyone was injured and to otherwise enforce and execute the laws relating to the investigation and reporting of traffic accidents.

In *Arnolt*, plaintiff sued for injuries she sustained while riding in a car which collided with a police vehicle being driven by the defendant police officer. In reversing the trial court's order dismissing all portions of plaintiff's complaint sounding in ordinary negligence, the supreme court stated that "the [trial] court based its dismissal order upon the mistaken conclusion that when on duty a police officer is *ipso facto* engaged 'in the execution or enforcement of any law.' " (52 Ill. 2d 27, 35, 282 N.E.2d 144, 148.) Noting, as an example, that "[a] policeman, while merely cruising in a vehicle in the line of duty, *may* not be afforded immunity under the Tort Immunity Act in that the factual determination of the situation *may* indicate that he was not at the time executing or enforcing a law" (emphasis added) (52 Ill. 2d 27, 34, 282 N.E.2d 144, 148), the court held that the question of whether a police officer is engaged in the execution or enforcement of a law is a factual determination which must, in every case, be made in the light of the circumstances involved, and remanded the case for further proceedings on that issue (see also *King v. City of Chicago* (1978), 66 Ill. App. 3d 356, 384 N.E.2d 22; *Anderson v. City of Chi-*

*cago* (1975), 29 Ill. App. 3d 971, 331 N.E.2d 243).

That is not to say that the determination must always be made by the trier of fact. Under the *Pedrick* standard, where the evidence is undisputed (see, *e.g., Vines v. City of Chicago* (1982), 110 Ill. App. 3d 1060, 443 N.E.2d 652) or susceptible to but one possible interpretation (see, *e.g., Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740; *Thompson v. City of Chicago* (1984), 128 Ill. App. 3d 59 (Romiti, J., dissenting)), the question may be decided as matter of law. However, where, as here, different inferences may be drawn from the evidence presented, under the holding in *Arnolt* determination of whether the officer was executing or enforcing any law is one for the trier of fact to make after consideration of the evidence in its totality.

Thus, in summary, while we agree with plaintiff that the evidence, when viewed most favorably for him, does not so overwhelmingly support defendants' contention that Officer Ptak was engaged in the execution or enforcement of a law so as to necessitate direction of the verdict in their favor on that basis, at the same time we do not believe that it so overwhelmingly favors plaintiff's contrary position as to warrant what was, in essence, a directed finding that Officer Ptak was not executing or enforcing a law at the time he was allegedly negligent. Having so found, we must remand this case for a new trial so that defendants may have the opportunity to submit this issue to the trier of fact.

Although plaintiff argues that because one of the key instructions tendered by defendants on the issue of immunity was erroneously drafted all instructions on that issue were properly refused by the trial court and that defendants' special interrogatories were correctly refused for the same reason, it is apparent from a reading of the record that they were refused on the basis of the trial court's ruling that sections 2—202 and 2—109 of the Tort Immunity Act were inapplicable to this case. In view of the fact that we have found it necessary to reverse that ruling and remand this cause for a new trial, a determination as to the propriety of those instructions and special interrogatories is not necessary.

For the reasons stated, the judgment is reversed, and this case is remanded for a new trial.

Reversed and remanded.

MEJDA, P.J., and PINCHAM, J., concur.