CURTIS A. BROWN, Plaintiff-Appellee, v. BROADWAY PERRYVILLE LUMBER COMPANY, Defendant-Appellant.

Second District   No. 2—86—0350

Opinion filed May 28, 1987.

Steven L. Nordquist, of Rockford, for appellant.

Joseph L. Polito, of Loves Park, for appellee.

JUSTICE HOPF delivered the opinion of the court:

The defendant, Broadway Perryville Lumber Company, appeals from a judgment in a bench trial awarding the plaintiff, Curtis A. Brown, $7,000 in damages based upon defendant's fraudulent misrepresentation that disability insurance provided for in a retail installment agreement between the parties would become effective immediately upon plaintiff's entering into the agreement with defendant. On appeal, defendant contends: (1) that the plaintiff failed to prove the essential elements of a common law fraud action; (2) that the trial court erred in dismissing defendant's motion to dismiss plaintiff's third amended complaint, as the complaint failed to allege the essential elements of a cause of action based on fraud; and (3) that the plaintiff failed to meet his burden of proving damages for fraud.

The evidence presented at trial showed that plaintiff, Curtis A. Brown, and his wife, Gloria Brown, entered into an agreement in early 1983 with defendant through its salesman, Donald Carlson, to remodel their kitchen. Mrs. Brown testified that the Browns asked Carlson to set up the financing for the remodeling job and informed him that they wanted disability insurance on the contract. Mrs. Brown stated that Carlson responded, "No problem. I'll set everything up *** we will get everything in order. All I will need you to do

is to come in the office *** and sign the papers."

Mrs. Brown related that the monthly payment on the financing included the insurance payment and that Carlson told the Browns the insurance went into effect immediately upon approval of the loan by the bank. The bank approved the loan on April 13, 1983, and, as far as the Browns were concerned, the loan closed on that date.

Mrs. Brown testified that the Browns were unaware of the fact that a certificate of completion had to be filled out by them before the bank would disperse the funds to defendant. Nothing was said to the Browns regarding the certificate nor was the certificate made known to them. Mrs. Brown was shown a copy of the retail installment agreement, which made a single reference to a completion certificate. The witness stated that eventually she did sign such a certificate sometime subsequent to May 20, 1983, after the work was completed and after her husband had become hospitalized with pulmonary lung disease.

When the Browns submitted a claim to the insurance company for payment on their loan, the company denied the claim. Mrs. Brown stated that she and her husband would never have signed the installment agreement had they not been told the insurance was effective immediately upon their signing. According to the witness, the Browns were still paying the insurance payment as though it were in effect because the premium was part of the monthly payment and that payment had not changed.

Donald Carlson, a salesman for defendant testifying as an adverse witness for plaintiff, stated that the retail installment agreement and a contract for the work to be performed by defendant were both signed on April 13, 1983. Carlson recalled discussing credit life and disability insurance with the Browns and that they wanted insurance on Mr. Brown before they would sign the contract. Carlson stated that the installment agreement made no mention of the effective date of disability insurance. Counsel for plaintiff then pointed out the paragraph within the agreement which indicated insurance commences on the date of the contract. Carlson maintained that although the contract is filled out prior to the contracting job, the terms of the agreement do not go into effect until the job is turned into the financing institution, City National Bank, for payment.

Carlson stated that payment on the loan started 30 days after completion of the job and that at that time the insurance started. When asked if the contract stated that the insurance did not start until 30 days after completion, Carlson replied in the negative. Carlson also testified that when the contract and the installment agreement

were executed, no discussion transpired regarding the need for a certificate of completion signed by the Browns when the remodeling work was completed.

Carlson stated that at the time of the signing of the documents, he went over the installment agreement with the Browns, telling them exactly how much the payments were and how much the insurance was costing them. It was Carlson's testimony that he did not tell the Browns that plaintiff would be covered by the insurance on the date they signed the agreement, that the Browns did not give Carlson any money for the insurance, and that the Browns did not request any interim coverage during the period following the execution of the agreement and the completion of the remodeling work.

During examination by the court, Carlson disclosed that he told the Browns that he could obtain insurance for them and that he explained how the insurance operated if plaintiff died or became disabled. Carlson related that he told the Browns: "The insurance company will make the payments [on the loan] while you are disabled." Carlson also stated that at the time he saw the Browns on April 13, the bank had approved the financing of the loan. Carlson said he went over the monthly payments with the Browns, explaining the cost of the remodeling work and the cost of the insurance, and then gave the Browns their copies of the documents. Carlson indicated that he told the Browns they would have to sign a completion certificate in order for defendant to receive payment from the bank.

Plaintiff, Curtis Brown, testified that at the time he signed the contract with defendant he was working for National Lock but that he was laid off from work at the end of April. Plaintiff was hospitalized on May 20, 1983, and was told by the doctor subsequent to that date that he was totally disabled. Plaintiff stated that he understood he had to sign a form for the bank signifying that the remodeling work was completed and that he had signed it while in the hospital. Plaintiff agreed that the insurance coverage was to begin at the time everyone had signed the contract and submitted it to the bank for its acceptance.

At the close of plaintiff's case, defendant made a motion for a directed finding which was denied. Defendant then presented his first witness, Charles F. Schramm, a loan officer for City National Bank, who identified a copy of the retail installment agreement the bank purchased through defendant on the Browns. Schramm stated that the agreement was executed on April 13, 1983, and that the date of May 20, 1983, at the bottom of the document referred to the date defendant assumed its half of the agreement to be binding. The agree-

ment was purchased from defendant by City National Bank on June 7, 1983. According to Schramm, the insurance was funded on June 7, which was when the bank would have transferred money into the insurance premium fund account that defendant had set up at the bank. Schramm stated that the bank required a completion certificate before it would disperse funds and that the certificate was signed by the Browns on May 20, 1983.

Schramm testified that the amount of the premium for disability insurance was refunded and applied back to the loan on August 22, 1983. The witness stated that credit life insurance on plaintiff still existed, as that portion of the total premium which applied to credit life insurance had not been refunded. Schramm also related that the Browns were making payments to the bank on the loan. The payment included the premium for insurance.

John Jamison, part owner of a division of Broadway Perryville Lumber Company, testified that he looked over all documents, such as the contract and installment agreement in question, prior to their being presented to City National Bank for acceptance. Jamison stated that he did not look at a retail installment agreement until a job was completed. Jamison explained the two different dates on the Browns' installment agreement. The April 13 date was the date on which Donald Carlson signed the contract and was the same date as the date of the contract defendant made with plaintiff for the remodeling work. The May 20 date was the completion date of the remodeling job. On the latter date, the witness made out a completion certificate and the insurance papers. About two weeks subsequent to the job, the Browns signed the certificate and Jamison signed the agreement over to the bank for payment on June 7. According to Jamison, the insurance became effective on that date. On cross-examination Jamison related that the May 20 date on the installment agreement with the Browns referred to the date of completion of the work and not to the date on which the contract was executed.

At the conclusion of all the evidence the court found defendant committed fraud and awarded plaintiff $7,000 plus costs of suit.

■ We note first that counsel for plaintiff has failed to comply with the rules governing briefs, most particularly in the argument part of the brief wherein counsel has failed to cite any authority in support of plaintiff's contentions. (103 Ill. 2d R. 341(e)(7).) Reviewing courts are entitled to have the issues clearly defined, with pertinent authorities cited and a cohesive legal argument presented. (*Williams v. Danley Lumber Co.* (1984), 129 Ill. App. 3d 325, 472 N.E.2d 586.) Because no citation to authority has been presented in *favor* of plain-

tiff's arguments, and counsel for plaintiff has even acknowledged his deliberate omission of any authority, we will, therefore, not consider plaintiff's arguments in reaching our decision.

Before reaching the issue of fraud, we first examine the plaintiff's third amended complaint to determine whether a cause of action has been stated. Defendant contends that the trial court erred in dismissing defendant's motion to dismiss plaintiff's third amended complaint, as the complaint failed to allege all of the essential elements of a cause of action based on fraud.

The prime function of pleadings is to apprise the opposition of the nature of the claim or defense which a party intends to raise at trial. (*Fitzpatrick v. City of Chicago* (1985), 131 Ill. App. 3d 582, 586, 475 N.E.2d 995.) The test of the sufficiency of a complaint is whether or not the necessary elements of the cause of action are alleged. (*Williams v. RCA Corp.* (1978), 59 Ill. App. 3d 229, 230, 376 N.E.2d 37.) To state a cause of action for fraud, the complaint must contain specific allegations of facts from which fraud is a necessary or probable inference. (*Wolford v. Household Finance Corp.* (1982), 105 Ill. App. 3d 1102, 1105, 435 N.E.2d 528.) The plaintiff must allege that the defendant made a false representation of a material fact knowing or believing it to be false, that defendant made the representation for the purpose of inducing the plaintiff to act, and that plaintiff reasonably believed in and relied on the statement to his detriment. *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 249, 483 N.E.2d 1263.

Here, the plaintiff in his third amended complaint alleged that he was told by defendant's agent and employee that disability insurance would be effective immediately upon the plaintiff's entering into a contract with defendant. The plaintiff also alleged that defendant knew the representation concerning disability insurance was false, that the representation was made for the purpose of inducing plaintiff to enter into the contract, and that plaintiff would not have entered into the contract except for his reliance on defendant's representation that he was covered by disability insurance at the time he entered into the contract. We conclude that the allegations contained within the complaint are sufficient to state a cause of action for fraud.

As a complaint may survive a motion to dismiss if the facts alleged state a cause of action (*Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 249, 483 N.E.2d 1263), and plaintiff's complaint pleads sufficient facts to reasonably inform the defendant of the nature of plaintiff's claim, we find the trial court did not err in refusing to grant defendant's motion to dismiss plaintiff's third

amended complaint.

Having determined that plaintiff's complaint was sufficient to state a cause of action for fraud, we turn next to defendant's contention that plaintiff failed to prove the essential elements of common law fraud.

■■■ For purposes of establishing common law fraud, there must be: (1) a statement of material fact as opposed to opinion; (2) the statement must be untrue; (3) the party making the statement knows or believes it to be untrue; (4) the person to whom the statement is made believed and relied on it and had a right to do so; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance of the person to whom the statement was made led to his injury. (*Sommer v. United Savings Life Insurance Co.* (1984), 128 Ill. App. 3d 808, 811, 471 N.E.2d 606.) Whether plaintiff has adequately proved these elements is a question of fact for the trier of fact (*Gordon v. Dolin* (1982), 105 Ill. App. 3d 319, 324, 434 N.E.2d 341), whose findings will not be disregarded unless against the manifest weight of the evidence (*Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 410, 454 N.E.2d 723). Fraud will not be presumed and must be proved by clear and convincing evidence. (*Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 222, 446 N.E.2d 499, *appeal after remand* (1984), 125 Ill. App. 3d 548, 466 N.E.2d 598.) However, " '[f]raud, like all other facts, may be proved by circumstances *** [and] "[w]hatever circumstances, when proven, convince the mind that the fraud charged has been perpetrated, is all that is required." ' " *Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 410, 454 N.E.2d 723, quoting *Schwarz v. Reznick* (1913), 257 Ill. 479, 485, 100 N.E. 900, quoting *Bryant v. Simoneau* (1869), 51 Ill. 324, 327.

■ A representation, although technically true, may nevertheless be fraudulent where it omits qualifying material, for a half-truth is sometimes more misleading than an outright lie. (*Kurti v. Fox Valley Radiologists, Ltd.* (1984), 124 Ill. App. 3d 933, 938, 464 N.E. 2d 1219.) In the case at bar, defendant's salesman, Donald Carlson, upon the Browns' expression that they wanted disability insurance before they would sign the contract, represented to the Browns that he would obtain the insurance for them. He also explained how the insurance operated if Mr. Brown became disabled, stating that "[t]he insurance company will make the payments [on the loan] while you are disabled." At the time of the signing of the retail installment agreement on April 13, 1983, Carlson went over the agreement with the Browns, explaining how much their payments were and how much the remod-

eling work and the insurance cost. Carlson testified that he did not tell the Browns that plaintiff would be covered by the insurance on the date they signed the agreement. However, he also did not relate to them in explaining the payments and the cost of the insurance that the insurance was not immediately effective, although his testimony made it clear that he knew the insurance did not become effective until after the completion of the work by defendant. Moreover, the agreement itself made no mention that the insurance did not start until after completion of the remodeling job, although it did state payments on the loan did not begin until the work was completed.

Mrs. Brown testified that Carlson told the Browns that the disability insurance went into effect immediately upon approval of the loan by the bank. The loan was approved on April 13, 1983, and as far as the Browns were concerned, the insurance became effective on that date. Mrs. Brown stated that she and her husband would never have signed the installment agreement if they had not been told the insurance was effective immediately. In fact, Carlson admitted at trial that the Browns wanted insurance on Mr. Brown before they would sign the contract.

A misrepresentation is "material" if it is such that had the other party been aware of it, he would have acted differently. (*Mack v. Plaza DeWitt, Ltd. Partnership* (1985), 137 Ill. App. 3d 343, 350, 484 N.E.2d 900.) Reliance on the truth of a false statement of material fact must be justified (*Kinsey v. Scott* (1984), 124 Ill. App. 3d 329, 335, 463 N.E.2d 1359), and while a person may rely on a misrepresentation without investigation if the party making the statement creates a false sense of security or blocks further inquiry, it must be determined whether the facts were such as to put a reasonable man on inquiry (*Marino v. United Bank of Illinois* (1985), 137 Ill. App. 3d 523, 527, 484 N.E.2d 935).

Here, we believe Carlson's representation to the Browns that he would take care of the disability insurance plus his explanation at the time of the Browns' signing of the installment agreement on April 13 as to how the insurance would operate and what it would cost them were such that the Browns believed the insurance became effective on that date. Moreover, this belief was justified given the Browns' representation to Carlson and Carlson's admission that the Browns wanted insurance on Mr. Brown before they would sign any agreement. Further, since the Browns had previously done business with defendant and Carlson, we do not believe that there was anything extraordinary in Carlson's representation that he would obtain the disability insurance on Mr. Brown so as to put the Browns on in-

quiry.

■■■ Defendant purports that plaintiff could not justifiably rely on Carlson's misrepresentation that disability insurance was effective immediately upon the Browns' signing of the agreement, as plaintiff had a preexisting illness which would have resulted in insurance coverage being denied. This theory is meritless, however, as defendant presented no proof to substantiate that plaintiff had a preexisting illness.

As a result of Carlson's material representations which omitted qualifying matters regarding the effective date of the insurance, the Browns were induced to enter into the installment agreement. It remains then for us to determine whether the last element of fraud, proof of injury or damage, resulted from plaintiff's reliance on defendant's misrepresentation.

■■■ ■ In an action for fraud, damages may not be predicated on mere speculation and must be a proximate, and not remote, consequence of the fraud. (*Shah v. Chicago Title & Trust Co.* (1983), 119 Ill. App. 3d 658, 662, 457 N.E.2d 147.) Generally, the measure of damages for fraud is such an amount as will compensate the plaintiff for the loss occasioned by the fraud or the amount which plaintiff is actually out of pocket by reason of the transaction. (*Martin v. Allstate Insurance Co.* (1981), 92 Ill. App. 3d 829, 835, 416 N.E.2d 347.) In other words, the defrauded party is entitled to be placed in the same financial position as he would have been in had the misrepresentation in fact been true. 92 Ill. App. 3d 829, 835, 416 N.E.2d 347.

Here, the testimony showed that plaintiff's damage was the result of defendant's fraud. On May 20, 1983, plaintiff was diagnosed as having chronic pulmonary lung disease, causing him to be totally disabled. Had the disability insurance gone into effect on April 13 as the Browns had been led to believe, the payments on the loan the Browns took out to finance defendant's $7,000 remodeling job would have been covered by the insurance. As a result of defendant's misrepresentation, however, the Browns, rather than the insurance company, must make the payments, even though Mr. Brown is now completely disabled and collecting social security.

The court determined that plaintiff had incurred $7,000, the amount of the contract with defendant, plus costs of suit in damages. Defendant maintains that there was no proof of the measure of damages, as demonstrated by the court's comment at the end of the trial that no evidence of the actual amount of damages had been introduced. We, however, read this comment by the court as referring only to its rejection of the $11,043.20 requested in the prayer of plaintiff's complaint.

■ From our examination of the record, the court's awarding $7,000 to plaintiff was justified. Both Mrs. Brown and Donald Carlson testified that the cost of the remodeling job was $7,000. Also, defendant's exhibit No. 1, the contract between the Browns and defendant for the remodeling work, which was admitted into evidence, indicates that the cost of the work was to be $7,000. Thus, there was evidence that plaintiff was injured in the amount of the price of the remodeling contract, since the evidence showed that plaintiff would never have entered into the contract had he known that he was not immediately covered by the insurance. Moreover, the court could use this amount for computation of damages, as the evidence of damage need only tend to show a basis for computation of damages with a fair degree of probability. *In re Application of Busse* (1984), 124 Ill. App. 3d 433, 439, 464 N.E.2d 651.

Accordingly, we find that proof of damages was shown and that evidence was introduced which permitted the court to calculate the damages. As we have reached this conclusion, we find it unnecessary to address defendant's separate issues dealing with damages.

Based on all the reasons given above, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

LINDBERG, P.J., and DUNN, J., concur.