Dorothy **BALABANOS**, Peter W. Hegel, Aphrodite Hegel, Peter Hegel, Sr., Elizabeth Hegel, Pamela Radke, John Saratsiotis, M.D. and Evonne Saratsiotis, Plaintiffs,

v.

**NORTH AMERICAN INVESTMENT GROUP, LTD.**, Marvin Berkowitz, Konstantine Polites and Ira Kaufman, Divesco, Inc., an Illinois corporation, George E. Polites and Eva Courialis Thomas, Defendants.

No. 86 C 3802.

United States District Court,
N.D. Illinois.

Dec. 16, 1988.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

 The complaint in this action was brought by eight individual investors against an investment association, North American Investment Group, Ltd. ("N.A.I. G."); an investment corporation, Divesco, Inc. ("Divesco"); and five individual defendants associated with the two defendant investment organizations. The complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982 & Supp. IV 1986), as well as various state law claims arising out of defendants' investment activities on behalf of the plaintiff investors. On March 9, 1988, we granted defendants' motion to dismiss the RICO count under Rule 9(b) of the Federal Rules of Civil Procedure for failure to plead the acts of racketeering with particularity as to all defendants. *Balabanos v. North American Investment Group, Ltd.*, 684 F.Supp. 503 (N.D.Ill.1988). When we dismissed the RICO count, the federal basis for the suit disappeared, so we also dismissed the pendent state law claims. After the plaintiffs filed an amended complaint, two of the defendants, Eva Courialis Thom-

as and Ira Kaufman, moved to dismiss the amended complaint or, in the alternative, to strike portions thereof. For the reasons set forth below, their motions are granted in part and denied in part.

## I. Factual Background [1]

As we discussed in our earlier opinion,[2] the complaint alleges that from approximately August 1982 through July 1984 defendants N.A.I.G., Marvin Berkowitz, Konstantine Polites, Ira Kaufman and Eva Courialis Thomas (collectively "the N.A.I.G. defendants") engaged in an abusive tax shelter scheme, and "[F]rom prior to November 1, 1983 through the present," defendants Divesco and George E. Polites (collectively "the Divesco defendants") "by and through their authorized agents ... as transferees, successors and assignees at N.A.I.G. Partnerships and N.A.I.G. Defendants and/or as de facto general partners and in control and in operation of N.A.I.G. and Divesco partnerships, willfully engaged in a scheme to defraud or attempt to defraud the Plaintiffs." (Amended Complaint ¶ 25). In July 1984, "[c]ertain N.A.I.G. defendants consented to a Final Judgment of Permanent Injunction (Consent Judgment) by Judge William T. Hart on July 26, 1984, in the matter entitled *United States of America v. North American Investment Group, Ltd., et al.*, Cause No. 84 C 3683, in the United States District Court for the Northern District of Illinois, East-ern Division, wherein the abuses were in fact the same as alleged in this action." (Amended Complaint ¶ 15) The complaint further alleges that the plaintiffs were never informed of this consent judgment and that the plaintiffs continued to be defrauded because the Divesco defendants had been managing and operating the N.A.I.G. and Divesco partnerships in the same fashion from on or about November 30, 1983, which was over six months prior to the entry of the consent judgment. The plaintiffs allege that Divesco, as the de facto general partner in control of the N.A.I.G. and Divesco partnerships, sent the N.A.I.G. investors, including plaintiffs, notices to make "capital contributions, payments or receivables allegedly due by [plaintiffs] to N.A.I.G. Partnerships directly to Divesco." (Amended Complaint ¶ 26). Thus, the plaintiffs allege that Divesco and N.A.I.G. operated in concert to further their scheme.

The crux of the scheme was to sell plaintiffs and other investors limited partnerships in syndicated real estate packages through which expenditures would then qualify for investment tax credits ("ITC") under the Internal Revenue Code. This would generate sufficient ITCs to reduce the plaintiff investors' federal income tax to zero for the then current year and also generate sufficient ITCs to carry back to the third preceding tax year to reduce that liability to zero as well. N.A.I.G. and Di-

---

**1.** In our earlier opinion, we set out the standard for a motion to dismiss: "As a motion to dismiss for failure to state a claim, the Court, of course, takes the well-pleaded allegations of the complaint as true and views them, as well as all reasonable inferences therefrom, in the light most favorable to the plaintiff. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), cert. denied, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Accordingly, to the extent defendants have referred to matters outside of the pleadings ... we ignore such arguments and concern ourselves solely with the pleadings." *Balabanos*, 684 F.Supp. at 504 n. 1. The defendants apparently read our footnote, because this time around they have limited their discussion to matters set out in the amended complaint. Unfortunately, it is now the plaintiffs who have referred to matters outside of their complaint. The standard has not changed since our earlier opinion see, e.g., *Kush v. American States Insurance Co.*, 853 F.2d 1380, 1382 (7th Cir.1988), and again we will ignore anything not presented in the complaint.

We must comment, however, on plaintiffs' repeated references to a criminal indictment against certain of the defendants, including Kaufman, based on the same tax shelter scheme alleged in this case. Plaintiffs never quite make clear why they refer to these indictments; we can only assume that they mean to undercut the defendants' case by the mere fact of the indictment. In doing so, the plaintiffs (or more properly, their counsel) ignore what is probably the most basic tenet of our system of criminal law: that a person is presumed innocent until proven guilty. This precept means that we can give no weight to the indictment alone.

**2.** The amended complaint is not greatly changed from the original, so much of our discussion in this section is taken from our earlier opinion.

vesco never owned the properties as they were required to do under the tax laws in order to claim the ITCs. They also syndicated the property without the knowledge or permission of the true owners. The rehabilitation expenditures were never actually made, and the N.A.I.G. and Divesco defendants merely created fictitious figures which were then reported to the Internal Revenue Service ("IRS"). N.A.I.G. and Divesco falsified documents which backdated the plaintiffs' investment payments to prior years and also prepared false federal income tax returns for the plaintiffs to claim the ITCs. The scheme was envisioned to last at least for three years. Each year the investor would invest for that year and would also have an unused ITC carryback to the third preceding year. By doing this for three consecutive years the investor would then receive refunds in the amount of his total taxes paid for six years and reduce his tax liability to zero.

The IRS subsequently informed the investors that their deductions attributable to these investments had been totally disallowed. The IRS independently determined that there is no substantiation for any business activity by the N.A.I.G. and Divesco partnerships and the IRS assessed tax deficiencies and penalties to the plaintiff investors as a result of their investments in the purported tax shelter programs of N.A.I.G. and Divesco.

## II. The RICO Claim

Thomas' and Kaufman's motions[3] present three grounds for dismissing the RICO claim. We consider these first because if we dismiss the RICO claim, we will no longer have jurisdiction to consider the pendent state law claims.

### A. *Interstate Commerce*

 Thomas and Kaufman first assert that the amended complaint should be denied for failure to allege facts showing the

alleged enterprise was engaged in or affected interstate commerce. We disagree. In paragraph 50 of the amended complaint, the plaintiffs allege: "Defendants are all associated with an 'enterprise' engaged in activities which affect interstate commerce." Amended Complaint ¶ 50. This simple assertion has been held to be sufficient for the purposes of stating a claim under RICO and surviving a motion to dismiss. *Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272, 1289 (7th Cir.1983); see also *Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308, 1313 n. 13 (N.D.Ill.1984). The plaintiffs, therefore, have adequately alleged the requisite nexus. The cases relied on by the defendants are not to the contrary; in those cases, the complaints made no allegations about interstate commerce at all. *Dunham v. Independence Bank of Chicago,* 629 F.Supp. 983, 991 (N.D.Ill.1986); *Fields v. National Republic Bank of Chicago,* 546 F.Supp. 123, 125 n. 6 (N.D.Ill.1982).

### B. *Particularity as to the Individual Defendants*

 Thomas and Kaufman also contend that the amended complaint fails the test of Federal Rule 9(b) because it does not set out specific facts showing that either defendant committed any fraudulent acts.[4] Rule 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

This Court has previously recognized that Rule 9(b)'s demand for greater specificity in pleadings serves at least three purposes:

Complaints alleging fraud should seek redress for a wrong rather than attempting

---

**3.** Although Thomas and Kaufman brought separate motions, they raise essentially the same issue, and Kaufman merely adopted Thomas' memorandum in support of the motion.

**4.** Kaufman actually omits this particular ground from his motion to dismiss, but the omission appears inadvertent. In all other respects,

Kaufman's motion essentially copies Thomas' motion. (Kaufman's motion even misspells "pendent" in the same place that Thomas' does.) Moreover, the motion skips from ground A2 to A4 where this particular ground should go. Accordingly, we will assume that Kaufman meant to assert this ground in his motion to dismiss.

to discover unknown wrongs. Moreover, defendants must be protected from the harm that results from charges of serious wrongdoing, as well as the harm that comes to their reputations when they are charged with the commission of acts involving moral turpitude. Finally, allegations of fraud must be concrete and particularized enough to give notice to the defendants of the conduct complained of, to enable the defendants to prepare a defense. *D & G Enterprises v. Continental Illinois National Bank & Trust Co.*, 574 F.Supp. 263, 266–67 (N.D.Ill.1983) (citations omitted); see also *Coronet Insurance Co. v. Seyfarth*, 665 F.Supp. 661, 666 (N.D.Ill.1987). Nonetheless, Rule 9(b) does not require the plaintiff to plead detailed evidentiary matter in the complaint, see, e.g., *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 404 (7th Cir.1984), affd, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

Rule 9(b) is of especial importance in a case involving multiple defendants. Where there are allegations of a fraudulent scheme with more than one defendant, the complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant. *Harris Trust & Savings Bank v. Ellis*, 609 F.Supp. 1118, 1123 (N.D. Ill.1985), aff'd, 810 F.2d 700 (7th Cir.1987); *D & G Enterprises*, 574 F.Supp. at 267. A complaint is sufficient if it reasonably notifies each defendant of the part he or she plays in the scheme. *Donato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 663 F.Supp. 669, 673 (N.D.Ill.1987). Accordingly, we must determine whether the amended complaint reasonably notifies Thomas

and Kaufman of their respective roles in the alleged scheme.

Although it is a close question, and although the complaint is certainly not a model of drafting,[5] we conclude that it meets the requirements of Rule 9(b). Paragraph 11 of the complaint states that Thomas "actively recruited many of the Plaintiffs and recommended to them the ... tax shelter programs," and paragraph 10 states that Kaufman "prepared tax returns for N.A.I.G. and its investors, including some of the Plaintiffs." Paragraph 46 then states that Thomas and Kaufman undertook these acts "intentionally and with full knowledge and appreciation of the intended results of the scheme and artifice to defraud and the false and fraudulent misrepresentations." These paragraphs, taken in combination, reasonably notify Thomas and Kaufman of their roles in the alleged schemes: Thomas as the recruiter and Kaufman as the tax preparer, with both knowing that the tax shelter scheme was fraudulent.

### C. *Particularity of Mail Fraud Allegations*

Thomas and Kaufman also argue that the amended complaint does not allege with adequate specificity the predicate acts of mail fraud that are necessary for a violation of RICO and, in particular, does not specify who made the mailings and when. This argument is obviously related to the argument discussed above, and it is equally unavailing. To be sure, the complaint nowhere states specifically that Thomas or Kaufman mailed something or caused something to be mailed in furtherance of the alleged scheme. On its face, the mail fraud statute, 18 U.S.C. § 1341 (1982), appears to require such an allegation.[6] But the federal courts have broadly

---

**5.** We note that the complaint often uses the passive voice. See, e.g., Amended Complaint ¶ 36. As a result, it is difficult to tell who did what.

**6.** Section 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any coun-

terfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the

construed the mail fraud statute and have held that it is satisfied as long as a mailing is foreseeable. See *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954) ("Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used"); *United States v. Draiman,* 784 F.2d 248, 251 (7th Cir.1986); *Ghouth v. Conticommodity Services, Inc.,* 642 F.Supp. 1325, 1332 (N.D.Ill.1986). Given that the scheme alleged is a tax fraud scheme, the mailings to the IRS, set out in paragraphs 33 and 34 of the amended complaint, were reasonably foreseeable.[7]

### D. Motion to Strike

 Thomas and Kaufman have also moved under Rule 12(f) to strike paragraphs 47–49 of the RICO count, contending that the allegations in these paragraphs lack the particularity required by Rule 9(b). See Thomas' Motion to Dismiss C11; Kaufman's Motion to Dismiss C10. For reasons that we discuss below, see Section VI, the motion to strike should more properly be labeled a motion to dismiss the claims raised in paragraphs 47–49.

With regard to paragraph 47, the motion merely rehashes arguments that we have already rejected in denying the motion to dismiss the entire RICO claim. We likewise reject those arguments here. The motion to strike raises more substantive arguments with regard to paragraphs 48 and 49. Paragraph 48 states that in further-

ance of their scheme, the defendants "used or caused to be used, on numerous occasions, the telephone and thereby violated" the wire fraud statute, 18 U.S.C. § 1343 (1982), and RICO. The complaint nowhere gives any details about these purported telephone calls, such as approximately when they were made, for what purpose or who was called. This bald assertion that the telephone was used is insufficient to meet Rule 9(b). In addition, unlike the mail fraud statute, the wire fraud statute requires interstate (or foreign) communication, see *United States v. Mueller,* 786 F.2d 293, 295 (7th Cir.1986); *United States v. Freeman,* 524 F.2d 337, 339 (7th Cir. 1975), cert. denied, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976), and the plaintiffs do not allege that the telephone calls were interstate calls. Accordingly, we dismiss paragraph 48 of Count III, the RICO count.

We also dismiss paragraph 49 of Count III. Paragraph 49 states, in its entirety, that "By reason of the conspiracy alleged above, the Defendants have also violated 18 U.S.C. Section 1962(d)." This is the only direct reference to a conspiracy, and we conclude that it is insufficient. "To state a claim for conspiracy, a plaintiff must allege the agreement of each defendant to the operation of the conspiracy. A complaint may be dismissed if it contains only conclusory, vague and general allegations of conspiracy." *Otto v. Variable Annuity Life Insurance Co.,* 814 F.2d 1127, 1137 (7th Cir.1982) (citations omitted), cert. denied, — U.S. ——, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988). Paragraph 49 is only a conclu-

---

person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

**7.** Thomas and Kaufman also argue that the mailings set out in paragraph 33 are insufficient because they were alleged on information and belief. Allegations in a complaint based on information and belief generally do not satisfy the particularity requirements of Rule 9(b). Thus, allegations of matters particularly within the knowledge of an adverse party must be accompanied by a statement of facts upon which the belief is founded. *D & G Enterprises v. Continental Illinois National Bank & Trust Co.,* 574 F.Supp. 263, 267 (N.D.Ill.1983). Thomas and Kaufman assert that the complaint fails

to provide the facts on which the information and belief of paragraph 33 is based, and that we should therefore give the paragraph no credence.

We disagree. Paragraph 33 is somewhat awkwardly constructed, but we conclude that the phrase "upon information and belief" is not meant to modify the references about mailings of information to the Internal Revenue Service. Even if we are incorrect, we note that a later paragraph, paragraph 37, alleges that the IRS has disallowed the fictitious expenditures alleged in paragraph 33. This is a sufficient basis for the information and belief that the figures were sent to the IRS.

sory allegation of conspiracy, and it does not meet the test established by Otto. Accordingly, it is dismissed.

### III. Illinois Limited Partnership Act

In addition to the RICO claims, plaintiffs have brought three claims based on Illinois law. Their first state claim alleges that the defendants violated "common law" and the Uniform Limited Partnership Act ("ULPA") adopted in Illinois at Ill.Rev.Stat. ch. 106½, ¶¶ 44–73 (1987). According to plaintiffs, the defendants solicited the investment of plaintiffs and other investors in the purported limited partnerships, in which N.A.I.G. was the general partner. Defendants represented that the various partnerships would invest in real estate qualifying for various deductions and tax credits, and that the tax benefits would accrue to the partnerships and then be funneled to the plaintiffs and the other investors. But the defendants never formed the limited partnerships as they promised and never invested the plaintiffs' money in real estate, or at least so the plaintiffs claim. Moreover, the plaintiffs allege that the defendants wasted the partnership assets and breached the fiduciary duties they owed to the plaintiffs, all in violation of the Limited Partnership Act and the "common law."

■ Thomas and Kaufman disagree. As Thomas and Kaufman correctly note, the existence of a limited partnership depends upon compliance with the ULPA. *In Land Real Estate Corp. v. Christoph*, 107 Ill. App.3d 183, 188, 63 Ill.Dec. 9, 13, 437 N.E. 2d 658, 662 (1st Dist.1982). Nonetheless, the plaintiffs claim, without any support, that the defendants are liable under the Act for failing to create a partnership in accord with the Act. We note that some courts from other states which have adopted the ULPA have held that in appropriate circumstances, a party can be estopped to deny the existence of a limited partnership, despite noncompliance with

the Act. See *Brown v. Brown*, 15 Ariz. App. 333, 488 P.2d 689, 699 (1971); *Rutland House Associates v. Rutroad Realty Corp.*, 28 A.D.2d 152, 283 N.Y.S.2d 520, 522 (1967). In Illinois, however, the limited partnership is a "creature of statute," *Christoph*, 107 Ill.App.3d at 188, 63 Ill.Dec. at 13, 437 N.E.2d at 662, and we doubt that Illinois courts would adopt an estoppel exception. Accordingly, we conclude that because there was no limited partnership, the plaintiffs cannot complain of a violation of the ULPA.

■ That still leaves the "common law." The plaintiffs never make clear what area of the common law they are referring to, but it seems that they mean the common law of partnership. The complaint may well establish the existence of a partnership and state a sufficient claim under the common law against other defendants,[8] but we need not decide that issue at this point. Even if there was a partnership, it was between the plaintiffs on the one hand and N.A.I.G., or possibly the principals of N.A.I.G., on the other. The fiduciary duties owed in a partnership are owed by the partners, see, e.g., *Couri v. Couri*, 95 Ill.2d 91, 98, 69 Ill.Dec. 117, 121, 447 N.E.2d 334, 337 (1983), and Thomas and Kaufman were not partners but rather employees or agents of N.A.I.G. See Amended Complaint ¶¶ 10–11, 13. Therefore, as a matter of law, they could not have breached fiduciary duties or wasted partnership assets.

■ The amended complaint also alleges that Thomas and Kaufman conspired with the N.A.I.G. principals to waste partnership assets and breach the fiduciary duties owed by N.A.I.G. This claim is without merit. A principal cannot conspire with an agent, see *Salaymeh v. Interqual, Inc.*, 155 Ill.App.3d 1040, 1043–44, 108 Ill. Dec. 578, 581, 508 N.E.2d 1155, 1158 (5th Dist.1987); *John Deere Co. v. Metzler*, 51

---

**8.** At least one Illinois court has held that a general partnership is formed when the parties intend to form a limited partnership but fail to do so because of noncompliance with the ULPA. *Deporter–Butterworth Tours, Inc. v. Tyrrell*, 151 Ill.App.3d 949, 957, 104 Ill.Dec. 821, 827, 503

N.E.2d 378, 384 (3d Dist.1987). The amended complaint appears to show that the plaintiffs intended to form a limited partnership, and that the principals of N.A.I.G. manifested an intent to do so. Thus, the general law of partnership would seem to apply.

Ill.App.2d 340, 355, 201 N.E.2d 478, 486 (4th Dist.1964), and as noted above, the complaint shows that Thomas and Kaufman were merely agents. In short, Count I does not state a claim against Thomas and Kaufman, although it may state one against the other defendants. Accordingly, Count I is dismissed as to Thomas and Kaufman.

### IV. Fraud Under Illinois Law

 The plaintiffs' second pendent state claim is for fraud. To prevail on a fraud claim under Illinois law, the plaintiffs must establish that the defendants made false representations of material fact, knowing or believing them to be false, for the purpose of inducing the plaintiffs to act, and that the plaintiffs reasonably or justifiably relied on defendants' statements to their detriment. See *Glazewski v. Coronet Insurance Co.*, 108 Ill.2d 243, 249, 91 Ill.Dec. 628, 631, 483 N.E.2d 1263, 1266 (1985); see also *West v. Western Casualty and Surety Co.*, 846 F.2d 387, 393 (7th Cir.1988); *Dixie–Portland Flour Mills, Inc. v. Nation Enterprises, Inc.*, 613 F.Supp. 985, 990 (N.D.Ill.1985).

Thomas and Kaufman raise a number of challenges to the plaintiffs' fraud claim. First, they argue that the amended complaint fails to set out the elements of common law fraud with the particularity required by Rule 9(b). We disagree. As we noted previously, the complaint is not a model of drafting, but a fair reading of it reveals all the elements of fraud. Paragraph 28A indicates that the defendants represented that they owned the properties which were to be rehabilitated for tax purposes, and paragraph 32 indicates that this representation was knowingly false. Paragraph 28A also indicates the misrepresentation was to induce the plaintiffs to invest their money in the purported tax shelter, and paragraphs 1–5 indicate that the plaintiffs did invest money in the shelters. In addition, although the complaint never explicitly says so, we believe the complaint as a whole indicates that the plaintiffs' reliance on the defendants' representations was justifiable. This is especially true since the defendants had established the indicia of partnership, see Amended Complaint ¶¶ 14, 20, and since the tax law then in force apparently would have given the promised tax benefits if the defendants had actually invested the money. See 26 U.S.C. §§ 46(a)(2)(F), 48(a)(1)(E), 48(g) (1982); see also Amended Complaint ¶29. Finally, paragraph 42 indicates that the plaintiffs were injured. We conclude that the complaint sufficiently sets out an action in fraud.

### V. The Illinois Consumer Fraud Act

 Count IV of the amended complaint alleges a violation of Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶¶ 261–272 (1987). Specifically, the plaintiffs allege a violation of section 2 of the Act, which provides in relevant part as follows:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.... Ill.Rev.Stat. ch. 121½, ¶ 262 (1987).

Thomas and Kaufman again challenge the sufficiency of the allegations under the Act, but they merely readopt the arguments that they advanced against the fraud counts. See Thomas' Memorandum at 7. Because the Consumer Fraud Act includes fraud, and because we have already held that the amended complaint states a claim under the Illinois law of fraud, we reject Thomas' and Kaufman's motions to dismiss Count IV.

### VI. The Motions to Strike

Thomas and Kaufman also have moved to strike certain portions of the complaint under Rule 12(f) of the Federal Rules of

Civil Procedure. Rule 12(f) allows the court to strike "from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." In general, the motion to strike is disfavored by the federal courts, see, e.g., *Hanna v. Lane,* 610 F.Supp. 32, 34 (N.D.Ill.1985), rev'd in part without opinion sub nom. *Hanna v. Fairman,* 832 F.2d 157 (7th Cir.1987); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1380 at 783 (1969) [hereinafter Wright & Miller].

■■■ Thomas and Kaufman have moved to strike many paragraphs of the complaint because the allegations in those paragraphs do not concern either Thomas or Kaufman.[9] However, Thomas and Kaufman cite no authority, and we are unaware of any, that would require us to strike paragraphs in a complaint just because they do not concern a particular defendant. If there were such a requirement, a plaintiff would have to file a separate complaint for each defendant, and that certainly is not the case. Accordingly, we deny Thomas' Motions to Strike C1–C6 and C9(c) and Kaufman's Motions to Strike C1–C5 and C8(c).

Thomas and Kaufman also use their motions to strike in an attempt to resurrect arguments that they already advanced in their motion to dismiss. Because we have already considered the issues raised in Thomas' Motions to Strike C8, C9(a), (b) and C12, and Kaufman's Motion to Strike C7, C8(a), (b) and C11, those motions are denied.

In support of the remaining motions to strike, Thomas and Kaufman do not identify any redundant, immaterial, impertinent or scandalous material, but rather attack the sufficiency of portions of the complaint. Accordingly, we will treat the rest of the motions to strike as motions to dismiss. See *Professional Asset Management, Inc.*

*v. Penn Square Bank, N.A.,* 566 F.Supp. 134, 136 (W.D.Okla.1985); *Golaris v. Jewel Tea Co.,* 22 F.R.D. 16, 17 (N.D.Ill.1958); 5 Wright & Miller, supra § 1380 at 783. We have already considered Thomas' Motion to Strike C11 and Kaufman's Motion to Strike C10 in section II.D.; we consider the remainder below.

### A. Loss of Tax Benefits

■■■ Paragraph 28B alleges that the defendants devised a scheme to "deprive the plaintiffs of their promised tax benefits." Thomas and Kaufman argue that this claim is insufficient because the complaint concedes that the plaintiffs were not entitled to these benefits, see Amended Complaint, Count II ¶41A, and therefore there was no economic loss. According to Thomas and Kaufman, "[T]here is no right of action for mere loss of expectations of benefits which one is not entitled to anyway." Thomas' Memorandum at 10; see also Thomas' Motion to Dismiss C7; Kaufman's Motion to Dismiss C6.

We disagree. The plaintiffs may not have been entitled to the tax benefits, but that was only because the defendants did not invest in the rehabilitation property as promised. We note that under the law of fraud, "the defrauded party is entitled to be placed in the same financial position as he would have been in had the misrepresentation in fact been true." *Brown v. Broadway Perryville Lumber Co.,* 156 Ill.App.3d 16, 25, 108 Ill.Dec. 593, 596, 508 N.E.2d 1170, 1176 (2d Dist.1987). Had the defendants actually invested in the rehabilitation property, as they misrepresented they would, the plaintiffs would have received the promised tax benefits. A claim based on these tax benefits would only place the plaintiffs in the position they would have been in if the misrepresentation had been true.[10] To be sure, this is the result under the common law of fraud, but we can dis-

---

9. Plaintiffs contend that many of the disputed paragraphs actually do concern Thomas and Kaufman, but as we discuss in the text, that does not matter.

10. Courts may limit damages to the plaintiffs' out-of-pocket expenses if the so-called "benefit of the bargain" damages are too speculative. See *Lee v. Heights Bank,* 112 Ill.App.3d 987, 998, 68 Ill.Dec. 514, 522, 446 N.E.2d 248, 256 (3d Dist.1983).

cern no reason why the result should be different under the mail fraud statute that is incorporated by RICO. Accordingly, we reject Thomas and Kaufman's attempt to dismiss paragraph 28B.

Thomas and Kaufman raise a similar argument against paragraph 42 of Count II. See Thomas' Motion to Dismiss C10; Kaufman's Motion to Dismiss C9.[11] Paragraph 42 alleges that some of the plaintiffs received refunds based on the fraudulent scheme described in the complaint, but were assessed deficiencies when the Internal Revenue Service disallowed the investment tax credits. Thomas and Kaufman again argue that since the plaintiffs were not entitled to the refunds in the first place, they suffered no economic loss when the IRS demanded the refunds back. This argument carries no greater weight here than it did with regard to paragraph 28B, and we therefore reject the motion to dismiss paragraph 42 of Count II.

### B. *Intangible Rights*

▆▆ Thomas and Kaufman also assert that we should dismiss all claims based on paragraphs 28C–28F. See Thomas' Motion to Dismiss C7; Kaufman's Motion to Dismiss C6. These paragraphs allege that the defendants devised a scheme to defraud the plaintiffs of various intangible rights, such as "their right to have the partnerships' activities conducted honestly," Amended Complaint ¶ 28C, and "their right to legal, honest and disinterested services," id. ¶ 28F. After the United States Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), these paragraphs clearly cannot support a claim under the mail fraud statute and therefore cannot support a claim under RICO. McNally held that the mail fraud statute is limited in scope to the protection of property rights, and does not extend to such intangible rights as those alleged in paragraphs 28C28F. See *McNally*, 107 S.Ct. at 2881; *United States v. Eckhardt*, 843 F.2d 989, 996 (7th Cir.), cert. denied, —— U.S. ——, 109 S.Ct. 106, 102 L.Ed.2d 81 (1988). Moreover, we are unaware of any authority that allows recovery for deprivation of intangible rights under any of the pendent state law theories. Accordingly, we dismiss all claims based on paragraphs 28C–28F.

### Conclusion

For the reasons set forth above, we deny Thomas and Kaufman's motions to dismiss in toto Counts I, III and IV of the amended complaint. We grant Thomas and Kaufman's motions to dismiss Count II, but only insofar as Count II asserts a claim against Thomas and Kaufman. We deny all of the motions to strike with the following exceptions: (1) Treating Thomas' Motion to Strike C7 and Kaufman's Motion to Strike C6 as a single motion to dismiss, we grant the motion in part and dismiss all claims based on paragraphs 28B–28F of the amended complaint. The remainder of the motion is denied. (2) Treating Thomas' Motion to Strike C11 and Kaufman's Motion to Strike C10 as a single motion to dismiss, we grant the motion in part and dismiss all claims based on paragraphs 48 and 49 of Count III. The remainder of the motion is denied. It is so ordered.

---

11. Thomas and Kaufman's motions are actually directed against paragraph 42 of Count III, but Thomas' brief makes it clear they are referring to paragraph 42 of Count II. This paragraph, however, is incorporated by reference into Count III. It appears that the mistake results from the plaintiffs' confusing method of numbering the paragraphs of the complaint.