**Michael HUDSON, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 91 C 7400.**

United States District Court, N.D. Illinois, E.D.

May 21, 1992.

Lisa Parsons Haracz, Legal Assistance Foundation of Chicago, Mark Joseph Heyrman, Brenda S. Barton, Mandel Legal Aid Clinic, Chicago, IL, for plaintiff.

Elizabeth M. Landes, Asst. U.S. Atty., Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Secretary of Health and Human Services Louis W. Sullivan ("Secretary") has moved for dismissal of plaintiff Michael Hudson's multi-count complaint. The Secretary maintains that Hudson has not exhausted all available administrative remedies pursuant to his claims for Title II ("Social Security Disability Insurance") and Title XVI ("Supplemental Security Income") benefits. For the reasons set forth below, we deny the motion to dismiss.

### I.

A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as all reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.*, 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth*).

### II.

Hudson filed his first claim for benefits on October 12, 1988. The Secretary denied his claim on January 30, 1989, and denied Hudson's request for reconsideration on March 14, 1989. Hudson then requested a hearing before an administrative law judge ("ALJ"), but, because he did not receive notice of the scheduled ALJ hearing date, did not attend the hearing. The ALJ denied Hudson's application. On July 25, 1990, Hudson requested a hearing before the Appeals Council of the Office of Hearings and Appeals ("Appeals Council") to review the denial of his first claim.

That same day, July 25, 1990, Hudson filed a second claim for benefits. On February 21, 1991, Hudson was told that his second claim had been forwarded to the Appeals Council pursuant to § DI 20101.-025(C)(1) of the Secretary's Program Operations Manual System ("POMS"). POMS § DI 20101.025(C)(1) provides that the Appeals Council "will generally consider the subsequent application with the prior claim." Hudson filed a third claim for benefits on March 12, 1991; this application, like the second, was forwarded to the Appeals Council.

### III.

In his complaint, Hudson alleges that "[t]he Secretary refuses to consider" either the second or third application for benefits while the first application is still pending before the Appeals Council. Put another way, as he synthesizes this action in his opposition to the Secretary's motion, Hudson "is challenging a system-wide policy which prevents consideration of his current evidence of eligibility for Title II and Title XVI benefits solely because a prior claim, based on his eligibility at an earlier date, is pending before the Appeals Council."

The rub is this. Pursuant to POMS § DI 20101.025(C)(1), additional benefit claims submitted by a someone like Hudson who already has a claim in the administrative pipeline will be forwarded to the Appeals Council to be "consider[ed] ... with the prior claim." Yet, insofar as the claims after the first claim contain evidence of, as Hudson puts it, "new and different disabling conditions and evidence of worsening conditions," the Secretary's own regulations—to be distinguished from the Secretary's policies, as set forth in the POMS—prevent the Appeals Council from considering that new evidence. Only new evidence that relates to the period on or before the

pertinent date that is the subject of the appeal to the Appeals Council (in this case the date that the ALJ dismissed Hudson's request for a hearing) can be considered by the Appeals Council. 20 C.F.R. §§ 404.-970(b), 416.1470(b) (1991). Hudson's second and third applications (filed July 25, 1990 and May 12, 1991, respectively) would largely be devoted to setting forth his eligibility for benefits subsequent to that date. Thus, the absurdity, as Hudson notes: "evidence is forwarded to the Appeals Council 'for consideration' even though such evidence *cannot be considered*." Response at 3 (emphasis in original).

The potential harm to persons like Hudson is readily apparent. For whatever reason, the Appeals Council process is often lengthy (though, as we shall see, apparently somewhat arbitrarily so); Hudson's request for review was filed in July 1990 and was only recently ruled on (more on this to follow). By contrast, a well-prepared initial application can be adjudicated comparatively swiftly; Hudson's first claim was evaluated (and denied) within several weeks. Hudson, then, who may or may not have a legitimate claim for benefits as described in his second and third applications, is forced to go without a determination of his eligibility for benefits based on his subsequent applications because his first application is languishing in the Appeals Council process. One might ask why he simply does not withdraw his appeal relating to the first application—then, presumably, the Secretary would be free to evaluate the second and third applications as an "original" matter. As Hudson points out, that option forces him to abandon any right to any benefits he may be entitled to via the initial application. In other words, to receive a determination (which could be a denial) of eligibility on his subsequent applications, Hudson must withdraw his appeal relating to application one, but in so doing, he forfeits any eligibility for benefits on that initial claim.

The Secretary, after steadfastly maintaining that this court has no jurisdiction over Hudson's claim because Hudson has failed to exhaust his administrative remedies and because he fails to state a cogniza-ble claim, adds to the mixture in the reply brief. There, the Secretary contends that certain "administrative actions have been taken" which render Hudson's suit here "moot." On April 10, 1992, the Appeals Council determined that Hudson had "good cause" for not appearing at his ALJ hearing. The Appeals Council remanded the case to an ALJ for a new hearing. This decision puts Hudson's first application back "into play," and it also puts the substance of his second and third applications into play as well; "[o]n remand, the ALJ will provide a hearing *de novo* encompassing the question of plaintiff's disability from the time of his first application to the date of the ALJ's decision after the hearing." Reply at 3–4 (citing 20 C.F.R. § 404.-944 (1991)); *see also id.* at 4 ("the period [covered by Hudson's subsequent applications] is entirely included in the ALJ's proceedings on remand on his first application").

The Secretary also maintains in the reply brief that POMS § DI 20101.025(C)(1) is discretionary, keying on the words *"will generally* consider the subsequent application with the prior claim" as support, and that with this discretion, the Secretary may in appropriate circumstances "immediately process a new claim which does not relate back [to a prior claim pending before the Appeals Council]." This is an inappropriate argument in a motion to dismiss. Hudson's complaint, as he points out, alleges that the Secretary has a policy and practice of immediately forwarding all subsequent applications whenever a prior application is pending in front of the Appeals Council. At this stage in these proceedings, the Secretary's arguments to the contrary are misplaced.

As for mootness, Hudson notes that, if the Secretary can moot litigation like Hudson's "by merely taking administrative action which renders the challenged conduct too short in duration to be fully litigated," it may succeed in evading judicial review of its practice (again, taking Hudson's complaint as true) of sending subsequent benefits applications into administrative limbo. We agree.

There are other reasons that this is a classic "capable of repetition yet evading review" case. Should the ALJ render an adverse decision, Hudson will in all likelihood request Appeals Council review. These requests are, as noted above, subject to often lengthy delays. While such an appeal is pending, "a reasonable likelihood exists that Mr. Hudson's condition will worsen during the interim and that he will file a subsequent application based on new evidence of disability which may not relate back to the ALJ's decision." Surreply at 3. As Hudson notes, given the Secretary's staunch defense of the legality of this process, there is "a sufficient likelihood that [Hudson] will again be wronged in a similar way." *Id.* at 4; *see also Honig v. Doe*, 484 U.S. 305, 323, 108 S.Ct. 592, 604, 98 L.Ed.2d 686 (1988).

## IV.

Accordingly, we decline to dismiss Hudson's complaint, and deny the Secretary's motion. The May 22, 1992 status date is vacated and reset for June 2, 1992, at 10:00 a.m. It is so ordered.