**VENTURE ASSOCIATES CORP.,**
a Tennessee Corporation,
Plaintiff,

v.

**ZENITH DATA SYSTEMS CORPORATION, a Delaware Corporation, Defendant.**

No. 92 C 0978.

United States District Court,
N.D. Illinois, E.D.

June 2, 1992.

Donald L. Johnson, Tobin Marais Richter, Chicago, IL, for plaintiff.

Thomas E. Bush, Jr., Saunders & Monroe, Chicago, IL, Craig Newman, Michael Schissel, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This diversity action arises out of an alleged agreement to purchase the assets of an affiliate company of the defendant. Plaintiff Venture Associate Corporation ("Venture") brings this single-count complaint against Zenith Data Systems Corporation ("ZDS"), claiming breach of contract. Presently before the court are (1) ZDS's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and (2) Venture's motion to exclude exhibits attached to ZDS's motion to dismiss. For the reasons set forth below, we deny Venture's motion to exclude, and grant ZDS's motion to dismiss.

### I. Motion to Dismiss Standard

A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988); *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth* ).

### II. Background

In November 1990, Venture received an unsolicited offer from Financiere Indosuez, the authorized broker for ZDS, to consider the purchase of ZDS's Health Business. After preliminary negotiations, on May 31, 1991, Venture mailed to Financiere Indosuez a signed "Letter of Intent" to purchase the assets of the Health Business for a price of $11 million. Thomas Kelly, Vice President Finance of ZDS, responded in writing on June 11, 1991, accepting in principle the terms and conditions of the Letter of Intent, and inviting negotiations to reach a definitive agreement. On June 12, 1991, Venture confirmed in writing its receipt and acceptance of the June 11 letter, and

indicated that it would begin to prepare the first draft of a definitive purchase agreement.

While reviewing the draft agreement submitted by Venture, on September 6, 1991, ZDS wrote Venture—knowing that the letter would be relied upon by prospective lenders—stating that the execution of a formal written agreement was anticipated on September 13, 1991, because substantial agreement on all major economic and legal aspects of the transaction had been reached. Thereafter, ZDS prepared a revised purchase agreement, sending it to Venture on September 11, 1991. On September 13, 1991, Venture returned the agreement, proposing minor, nonsubstantive changes and agreeing to immediately execute the document as amended. The agreement was never retyped by ZDS, and was never signed by the parties. Nonetheless, Venture contends that each side manifested mutual assent, culminating in an agreement with its terms embodied in the September 13, 1991 document, as amended by Venture's minor handwritten notations.

Venture states that during early October, 1991, ZDS concluded that it had undervalued the assets of the Health Business by at least $3.5 million. Accordingly, on October 15, 1991, Financiere Indosuez, acting at the direction of ZDS, wrote to Venture, stating that the sale could only proceed upon adjustment of the purchase price. Venture considered this demand a breach of contract, yet in the interests of avoiding litigation met with ZDS to discuss the new term. Venture reviewed ZDS's proposal and refused to execute a newly drafted sales agreement. On November 13, 1991, Thomas Kelly wrote to Venture and reiterated that the price of the Health Business stood at $14.5 million. Venture states that as of September 13, 1991, it had performed all of the conditions imposed under the agreement, and as a result of the breach suffered direct and consequential damages in excess of $3.5 million.

### III. Motion to Exclude

In support of its motion to dismiss, ZDS attached as exhibits a copy of the complaint, the May 31, 1991 Letter of Intent, Thomas Kelly's letter of June 11, 1991, and Venture's letter of June 12, 1991. Noting that the additional documents were not attached to the complaint, Venture argues that these documents should be excluded or, in the alternative, that this court should treat the motion as one for summary judgment to be disposed of in accordance with Fed.R.Civ.P. 56. We take neither course.

It is settled law that documents integral to plaintiff's claim, yet not appended to its complaint, will be considered part of the pleading if attached by a defendant in a motion to dismiss. *See Field v. Trump*, 850 F.2d 938, 949 (2d Cir.1988), *cert. denied*, 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 739 n. 12 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987); *In re First Chicago Corp. Sec. Litig.*, 769 F.Supp. 1444, 1450 (N.D.Ill. 1991); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1327, at 762–63 (2d ed. 1990). In its complaint, Venture cites to each of the additional documents in question. Complaint ¶¶ 6–7, at 2. Significantly, in order to establish the existence of a contract, Venture states: "[T]he manifestation of [the parties'] mutual assent is found in all of the written documents exchanged between them up to and including September 13, 1991." *Id.* ¶ 10, at 3. As these documents pierce the core of Venture's breach of contract claim, we will consider them in conjunction with ZDS's motion to dismiss and, to the extent that the written documents contradict the allegations in the complaint, the former controls. *See In re First Chicago Corp. Sec. Litig.*, 769 F.Supp. at 1450; 5 C. Wright & A. Miller, *supra*, § 1327, at 766–67.

### IV. Motion to Dismiss

As noted by the Seventh Circuit, courts are often confronted with "a pattern common in commercial life," *Empro Mfg. Co. v. Ball–Co Mfg., Inc.*, 870 F.2d 423, 424 (7th Cir.1989):

Two firms reach concord on the general terms of their transaction. They sign a document, captioned "agreement in prin-

ciple" or "letter of intent", memorializing these terms but anticipating further negotiations and decisions—an appraisal of the assets, the clearing of title, the list is endless. One of these terms proves divisive, and the deal collapses. The party that perceives itself the loser then claims that the preliminary document has legal force independent of the definitive contract.

The present case is analogous to the dispute described in *Empro*. The question raised in ZDS's motion to dismiss is whether the documents exchanged by the parties, starting with the Letter of Intent dated May 31, 1991 and ending with the September 13, 1991 draft agreement as edited by Venture, form a legally binding contract.[1] We think not.

█ As discussed above, the proposed purchase of ZDS's Health Business began with a "Letter of Intent" drafted by Venture and accepted in principle by ZDS. This preliminary agreement led to the exchange of various draft purchase agreements in the effort to solidify a definitive agreement. The initial draft agreement was drafted by Venture, representing an offer. ZDS responded on September 11, 1991, by sending a revised draft purchase agreement—*i.e.*, a counteroffer. Such counteroffer is a rejection of the original offer, which expires and may not be accepted later. *Lee v. Voyles*, 898 F.2d 76, 78 (7th Cir.1990) (citing *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.*, 137 Ill.App.3d 550, 558–59, 92 Ill.Dec. 323, 330, 484 N.E.2d 1178, 1185 (1st Dist.1985)). Rather than accept ZDS's counteroffer, Venture "returned the agreement on September 13, 1991, with proposed minor, nonsubstantive changes on it in writing...." Complaint ¶ 9, at 3. Venture's characterization of its modification as minor and nonsubstantive does not alter the legal conclusion to be drawn from its action. Illinois law is clear that an "acceptance must comply *strictly* with the terms of the offer: ... An acceptance requiring *any* modification or change of terms constitutes a rejection of the original offer and becomes a counteroffer that

must be accepted by the original offeror before a valid contract is formed." *Ebert*, 137 Ill.App.3d at 558–59, 92 Ill.Dec. at 330, 484 N.E.2d at 1185 (emphasis added); *see also Dresser Indus. v. Pyrrhus AG*, 936 F.2d 921, 927 (7th Cir.1991) (interpreting Illinois law). Accordingly, Venture's proposed modification created yet another counteroffer, and not an acceptance of the initial ZDS counteroffer. As conceded by Venture, ZDS did not act upon this second counteroffer, *see* Complaint ¶ 10, at 3, and no contract could have been formed as a result of this string of correspondence and negotiation. Therefore, to the extent that any contractual obligation arose out of the parties' dealings, such obligation must stem from the preliminary agreement in principle—*i.e.*, the Letter of Intent.

█ Under Illinois law, whether a writing setting forth all the essential terms of a contract, but contemplating a later execution of a formal agreement, is itself a contract as opposed to mere negotiation depends on the intent of the parties. *See Inland Real Estate Corp. v. Christoph*, 107 Ill.App.3d 183, 185, 63 Ill.Dec. 9, 11, 437 N.E.2d 658, 660 (1st Dist.1981); *Interway Inc. v. Alagna*, 85 Ill.App.3d 1094, 1098, 41 Ill.Dec. 117, 120, 407 N.E.2d 615, 618 (1st Dist.1980). Generally, when no ambiguity exists in the terms of the document, the construction of the writing is a question of law, and the intention of the parties must be determined exclusively from the language used. *Chicago Inv. Corp. v. Dolins*, 93 Ill.App.3d 971, 974, 49 Ill.Dec. 415, 418, 418 N.E.2d 59, 62 (1st Dist.1981); *Interway*, 85 Ill.App.3d at 1098, 41 Ill.Dec. at 120, 407 N.E.2d at 618. As recently noted by the Seventh Circuit: "Contract law gives effect to the parties' wishes, but they must express these openly. Put differently, 'intent' in contract law is objective rather than subjective...." *Empro*, 870 F.2d at 425 (interpreting Illinois law).

█ Upon careful review of the unambiguous text and structure of the Letter of Intent, there can be no doubt that the

---

1. It is undisputed that Illinois law applies in this action.

parties intended that the execution of a formal agreement be a condition precedent to a contractual obligation. Paragraph six of the Letter begins: "This proposal, of course, is subject to the preparation and execution of a mutually satisfactory Purchase Agreement (containing customary representations and warranties)." Similar language is contained in paragraph eight: "It is understood that this is merely a letter of intent subject to the execution by Seller and Buyer of a definitive Purchase Agreement ... [and] does not constitute a binding obligation on either of us." Moreover, the Letter of Intent provides that "[u]pon acceptance by Seller of this letter, we shall commence the drafting of a definitive Purchase Agreement for submission to Seller and Seller's counsel for review." Finally, paragraph eight explicitly deals with the possibility that no binding obligation may result from future negotiations, providing: "If the acquisition contemplated hereby shall not become effective for any reason, each of the parties hereto shall pay its own expenses."

> Letters of intent and agreements in principle often ... do no more than set the stage for negotiations on details. Sometimes the details can be ironed out; sometimes they can't. Illinois, as *Chicago Investment, Interway,* and *Feldman* [*v. Allegheny Int'l, Inc.,* 850 F.2d 1217 (7th Cir.1987) (interpreting Illinois law)] show, allows the parties to approach agreement in stages, without fear that by reaching a preliminary understanding they have bargained away their privilege to disagree on the specifics. Approaching agreement by stages is a valuable method of doing business. So long as Illinois preserves the availability of this device, a federal court in a diversity case must send a the disappointed party home empty-handed.

*Empro,* 870 F.2d at 426. In the absence of an enforceable contractual obligation, we are obligated to send Venture—surely disappointed by the evaporation of its prospect to acquire the Health Business at a price substantially below market value— "home empty-handed."

In a final attempt to salvage its complaint, Venture argues that the decision in *Quake Const. v. American Airlines, Inc.,* 181 Ill.App.3d 908, 130 Ill.Dec. 534, 537 N.E.2d 863 (1st Dist.1989), *aff'd,* 141 Ill.2d 281, 152 Ill.Dec. 308, 565 N.E.2d 990 (1990), has changed the face of Illinois law regarding letters of intent and preliminary agreements. We disagree. Indeed, the court in *Quake* affirmed the standards under which to evaluate such preliminary understandings, stating that "if the parties intended that the execution of a formal agreement be a condition precedent, then no contract arises unless and until a formal agreement is executed." *Id.* at 913, 130 Ill.Dec. at 537, 537 N.E.2d at 866 (citations omitted). The court in *Quake* continued by analyzing the document in question to determine if the language of the writing is ambiguous or not. Concluding that the letter of intent (advising plaintiff that it had been awarded a contract for the construction project in question) was in fact ambiguous, the court held that the construction of the writing is an issue of fact, and parol evidence is admissible to explain and ascertain what the parties intended. *Id.* at 913–14, 130 Ill.Dec. at 538–39, 537 N.E.2d at 867–68. This holding is entirely consistent with the holdings of *Chicago Investment, Interway, Feldman* and *Empro.* That the court in *Quake* could not determine as a matter of law that a contract either did or did not exist represents nothing more than a factual discrepancy between that case and the present case. Accordingly, ZDS's motion to dismiss is granted.

## V. Conclusion

For the reasons set forth above, we deny Venture's motion to exclude documents, and grant ZDS's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). It is so ordered.