**TEKTEL, INC., a Delaware Corporation, Plaintiff,**

v.

**Howard S. MAIER, a New York citizen, Defendant.**

**No. 92 C 5965.**

United States District Court, N.D. Illinois, E.D.

Nov. 25, 1992.

George N. Vurdelja, Jr., Chicago, IL, for Tektel Inc.

Karen L. Taylor, Richard C. Robin, Vedder Price Kaufman, Chicago, IL, for Howard S. Maier.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Tektel, Inc. ("Tektel"), has brought this action against Howard S. Maier ("Maier") seeking payment allegedly due on a secured promissory note. Defendant Maier has raised affirmative defenses and filed a four-count counterclaim against

Tektel. Tektel now moves to strike portions of Maier's Answer and to dismiss the defendant's counterclaim in its entirety. For the reasons set forth below, we deny plaintiff's motion to strike, grant his motion to dismiss paragraph 7(b) of Count II, and deny his motion to dismiss other portions of Count II and Counts I, III, and IV.

## I. STANDARD OF REVIEW

 In considering a motion to dismiss, the court accepts the factual allegations of the complaint as true. *See Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (citing *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990). Furthermore, unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief," a court should not grant a motion to dismiss. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Accordingly, the court views the well-pleaded complaint's allegations, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff. *See Balabanos v. North Am. Invest. Group, Ltd.*, 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986)).

## II. FACTUAL BACKGROUND

On or about June 3, 1983, Tektel and Maier entered into a Stock Purchase and Sale Agreement ("Stock Agreement"), whereby Maier purchased $78,000 of Tektel common stock. As amended on June 29, 1983, the Stock Agreement provided that if Maier's employment with Tektel was terminated within one year, Tektel would have the option to purchase up to 100% of that stock, at the lower of its free market value or book value. The Stock Agreement also provided that Tektel would have the right to set off the purchase price of the stock against any debts Maier might have to Tektel.

On June 6, 1983, Maier began to work for Tektel as Vice President of Sales and Marketing. On or about June 8, 1983, the two parties entered into an Employment Agreement which provided for an employment term of five years at a salary of $100,000 per annum. The Employment Agreement established that Tektel could terminate Maier before the five years expired only for good cause.

Also on or about June 8, 1983, Maier executed a Secured Promissory Note ("Note") from Tektel for the sum of $75,000. Payment was due on or before June 8, 1988, with interest at the rate charged by American National Bank and Trust Company to its most favorable borrowers on short-term commercial loans. At times during the life of the loan, that interest rate rose above 9%.

On December 8, 1983, Maier alleges that Tektel terminated his employment. On September 4, 1992, Tektel sued Maier for failing to make payment due on the Note.

## III. DISCUSSION

### A. Motion to Strike

 Pursuant to Federal Rule of Civil Procedure 12(f), Tektel moves to strike portions of Maier's answer as redundant, immaterial, and not responsive to the allegations. Paragraph 4 alleges that "[o]n or about June 8, 1983, Maier executed a secured promissory note ("Note"), a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference." Cmplt. at ¶ 4. Maier answered as follows:

Howard Maier admits that on or about June 8, 1983 he signed a Secured Promissory Note, a copy of which is attached to the Complaint a Exhibit A, to evidence a loan made to him in the amount of $75,000.

Further responding to the allegations contained in paragraph 4, Howard Maier affirmatively states that the foregoing loan was extended to him for the sole purpose of obtaining his services as a Vice President Sales Marketing [*sic*].

Answr. at ¶ 4. Tektel seeks to strike everything following "Exhibit A."

Tektel also moves to strike all but the first sentence of Maier's response to paragraph 7 of the complaint. Paragraph 7 simply alleges that "[d]emand has been made for payment on the note." Cmplt. at ¶ 7. In the first sentence of his response, Maier "admits that his counsel received a demand for payment on the Note." Answr. at ¶ 7. The defendant further states that "to the extent that a valid demand for payment of interest was made it was unlawful, defective, and/or incomplete," and goes on to list three reasons which support his charge. *See* Answr. at ¶ 7.

" 'Motions to strike under Federal Rule 12(f) are not favored, and are usually denied unless the language in the pleading has no possible relation to the controversy and is clearly prejudicial.' " *Simmons v. John F. Kennedy Medical Center*, 727 F.Supp. 440, 442 (N.D.Ill.1989), *quoting Garza v. Chicago Health Clubs, Inc.*, 347 F.Supp. 955, 962 (N.D.Ill.1977); *see also Magnavox Co. v. APF Electronics, Inc.*, 496 F.Supp. 29, 35 (N.D.Ill.1980) (redundant and immaterial allegations may stand unless they are prejudicial as well). Here, Maier's extensive responses to the complaint may repeat allegations stated, more appropriately, in his counterclaim. Nevertheless, the statements are not irrelevant to the issues in the case, moreover, they are not unduly prejudicial to Tektel. Accordingly, we deny the motion to strike.

## B. Motion to Dismiss

### (i) Count I

■ Tektel seeks to dismiss Count I of Maier's counterclaim for breach of the compensation clause of the contract, arguing that Maier failed to allege that he fulfilled his own obligations under the Employment Agreement. The Employment Agreement, attached as Exhibit 1 to Maier's responsive pleading, provided that the defendant "shall devote his full time and his best efforts and loyalty to [the] employment." Answr., Exh. 1 at ¶ 1. Maier, however, failed to allege that he devoted his full time to the job, alleging instead that he devoted "substantial time." Cntrclm. at ¶ 3. However, it is possible that Maier's devotion of "substantial time" to his employment constitutes sufficient performance under the contract to require compensation.[1] Because it is not beyond doubt that Maier can prove a set of facts entitling him to relief, we deny Tektel's motion to dismiss Count I.

### (ii) Count II

■ In Count II, Maier essentially alleges that Tektel breached the Employment Agreement by terminating his employment without good cause. Tektel does not challenge this basic claim. Instead, Tektel contends that portions of the count do not state additional claims upon which relief may be granted.

■ First, Tektel argues that Maier seeks the same damages in paragraph 7(a) of Count II that he seeks in Count I, namely the compensation due him for the time that he worked for Tektel. Even if Maier is seeking the same compensation, a fact Maier denies,[2] it is perfectly acceptable for a plaintiff to seek the same damages under different theories of recovery. Accordingly, because the two counts are based on different theories of recovery,[3] we deny Tektel's motion to dismiss on this ground.

■ Next, Tektel seeks to dismiss that portion of the count which alleges that the company "failed to allow [Maier] to exercise the rights and prerogative that he was entitled to under the terms of the Employ-

---

1. We note that Maier does allege that he "duly performed all terms and conditions of said agreement on his part to be performed." Cntrclm., Count I at ¶ 6.

2. Maier claims that in Count I he seeks compensation for the time he worked for Tektel, while in Count II he seeks the compensation he would have received for the remainder of the five year employment term. *See* Defendant's Memoran-

dum in Response to Plaintiff's Motion to Dismiss at pp. 4–5.

3. We read Count I to allege that Tektel breached that portion of the Employment Agreement which provided for Maier's compensation, and read Count II as seeking damages stemming from Tektel's wrongful termination of Maier.

ment Agreement as Vice President of Sales and Marketing." Cntrclm., Count II at ¶ 7(b). Tektel points out that the Employment Agreement does not set forth any "rights and prerogative" to which Maier was entitled. Given the absence of any specified rights and prerogatives under the terms of the Employment Agreement, we hereby dismiss paragraph 7(b) of Count II.

■ Finally, Tektel challenges Maier's allegation that the company breached its duty of good faith and fair dealing. Maier, however, has alleged sufficient facts to support a claim for breach of good faith and fair dealing. The implied covenant of good faith and fair dealing requires a party vested with discretion to exercise that discretion reasonably, with proper motive and in a manner consistent with the reasonable expectations of the parties. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1444 (7th Cir.1992), *citing Dayan v. McDonald's Corp.*, 125 Ill.App.3d 972, 81 Ill. Dec. 156, 169–70, 466 N.E.2d 958, 971–72 (1984). While Tektel asserts that Maier fails to allege any area of discretion granted to the company, or any improper exercise of such discretion, the Employment Agreement clearly gave Tektel the discretion to terminate Maier's employment for good cause. Because we can infer that Maier had a reasonable expectation that Tektel would exercise its discretion fairly and with a proper motive, and because Maier has alleged that he did nothing to give Tektel cause to fire him, his claim that Tektel breached the implied covenant of good faith and fair dealing survives this motion to dismiss.

#### (iii) Count III

■ Count III alleges that Tektel exercised its option under the Stock Purchase and Sale Agreement ("Stock Agreement") to repurchases Maier's stock and then failed to consummate the transaction as required by the Stock Agreement. Maier now asks this Court to award him the book value of his shares and use that amount as

a set-off against any judgment entered in favor of Tektel. Tektel, in turn, contends that the Stock Agreement does not confer on Maier an independent right to seek recovery for breach of the Stock Agreement, only the right to reduce any judgment Tektel obtains against him on the Note.

Tektel fails to point to any language in the Stock Agreement limiting Maier's right to maintain a claim only in the event that the company obtains judgment on the Note, nor have we discovered such a provision. Accordingly, Tektel's motion to dismiss is denied.[4]

#### (iv) Count IV

■ In Count IV, Maier alleges that the interest rate Tektel charged on the secured loan is usurious and in violation of the Illinois Interest Act, Ill.Rev.Stat. Chap. 17 § 6401 *et. seq.*, because it exceeds the 9% interest rate that may be charged to an individual. Tektel moves to dismiss this claim, arguing that Maier failed to allege that the loan was made of "money or something circulating as money," and, further, that the loan constituted a business loan to purchase stock and is therefore not subject to the usury statutes. Under the liberal federal pleading requirements, however, Maier's claim survives this motion to dismiss.

Maier has alleged sufficient facts to put Tektel on notice of his usury claim. Although Maier has not specifically alleged that the loan was in money, the Note states that he is required to pay Tektel $75,000 "in lawful money of the United States of America." Cmplt. at Exh. A. Furthermore, in its Written Consent to the loan, Tektel states that "upon the execution and delivery of the Note by Maier ... the proper officers of the corporation shall loan to Maier $75,000." For the purposes of a 12(b)(6) motion, we may assume that there was a loan of money.

■ Finally, while Tektel is correct that a loan to purchase stock falls under the

---

**4.** Since Tektel does not argue that Maier's allegations fail to state a claim for breach of the Stock Agreement, we need not reach that issue.

We note, however, that Maier appears to have alleged sufficient facts to state such a claim.

business loan exception to Illinois' usury law, *Allen v. Mainway Financial Corp.*, 446 F.Supp. 26, 27–28 (N.D.Ill.1977), the pleadings remain unclear as to the purpose of this loan. Maier points out that he purchased his shares of Tektel five days before the Note was executed. Additionally, the Written Consent acknowledges that "[Maier's] personal finances are such that he requires a loan in the amount of $75,000." Defendant's Memorandum in Response to Plaintiff's Motion to Dismiss at Exh. A. On the other hand, the proximity of the stock purchase and the execution of the Note lend credence to Tektel's contention that the loan was for the purpose of purchasing stock. However, because we must resolve all ambiguities in Maier's favor, we deny the motion to dismiss Count IV. *Balabanos*, 708 F.Supp. at 1491 n. 1.

## IV. CONCLUSION

For the foregoing reasons, we deny Tektel's motion to strike and deny its motion to dismiss Counts I, III and IV. With respect to Count II, we dismiss paragraph 7(b) and let the rest stand. It is so ordered.